EDWIN P. WILLIAMSON AND NICHOLAS SPIELES,

vs.

GORDON HEIGHTS RAILWAY COMPANY.

*New Castle, March T.* 1898.

Where a street railway charter required that the construction of the railway should be commenced within six months after the passage of the act and completed and in operation within two years thereafter, otherwise the charter to become void, and all rights, privileges and franchises therein granted to cease; and a supplement passed two years later authorized the construction of a branch line and provided that with respect to such branch line, the corporation should have all rights and privileges and be subject to all the duties and responsibilities which devolved upon it with respect to the road constructed and maintained under the original charter; *held*, that a failure to construct the branch line, within two years from the passage of the supplement to the charter, resulted in a forfeiture of the rights granted by it.

There is no rule of construction more fixed and unyielding than that requiring strict construction of grants to corporations.

BILL FOR AN INJUNCTION to restrain the defendant from building a railway across the property of the complainants. The defendant was a street railway company operating a

trolley line the construction of which, under its charter, it had been required to commence, within six months, and to complete within two years, from the enactment of the charter, and its construction was completed within the time limited.  By a supplement to the charter passed May 6, 1895, the company was authorized to construct and maintain a branch line of railway from any point on its line to the Delaware and Pennsylvania boundary line.  The supplement to the charter also provided that the corporation should have and exercise all the rights and privileges and be subject to all the duties and responsibilities which did or shall belong to, or devolve upon, the corporation in respect to the railway originally constructed and maintained.  The period of two years had elapsed and the complainants claim that the limitation contained in the original charter with respect to the existing railway also applied under the supplementary charter to the construction of the branch railway.  The defendant denied that such limitation applied.  Upon the filing of the bill a rule was granted to show cause why the preliminary injunction prayed for should not be granted, and the defendant filed its answer.  The case was argued upon the motion for a preliminary injunction.  The material provisions of the original .charter and supplement thereto are fully set out in the opinion.

*P. L. Cooper, Jr.,* for the complainants, contended that the right to build the branch line vested in the respondent company by the Act of May 6, 1895, was subject to the time limitation contained in the original charter.  This would seem to follow, naturally, for two reasons.

First, that the original act and the supplemental act relate to the same matter, and must be read together as one act; that the supplemental act must be so grafted into the original act that the two shall be and become one, with the time limitations part and parcel of it.

Second, that the supplemental act by its terms provides that the company, with reference to the branch line, shall be subject to all the duties and responsibilities which devolved upon the corporation with respect to the main line, and that

these duties and responsibilities include this time limitation upon the right to construct.

It is well settled that charters must, in all cases, be construed most strongly against the corporation and in favor of the public, and corporate powers are not to be created by implication, nor extended by construction. *Penna. R. R. Co. vs. Canal Com'rs.*, 21 *Pa. St.* 9, 22.

The question involved in this case is a simple one. It involves no question of fact, but one merely of construction of the supplemental act giving to the railway company the authority to build the branch line. What the Court is required to do is to ascertain the legislative intent, and that seems to be unquestionable that the additional privileges granted by the supplemental act were to be enjoyed upon precisely the same conditions as were prescribed in the original charter with respect to rights and privileges there granted. It would seem that for the purpose of limiting the construction of the branch line to the same period prescribed in the original charter, with respect to the main line, language could not have been employed by the Legislature more direct or emphatic.

*Willard Saulsbury* and *Joseph S. Clark* for respondent.

The supplementary act of May 6, 1895, authorizing the respondent to construct a branch line contains no time limit whatever. If any such limitation is to be read into that act it is by implication pure and simple.

I. The rule of statutory construction suggested in the first proposition of counsel for the complainant is not altogether novel in itself, but its application to a case like this is decidedly novel. Where one act amends another, both may be interpreted as one, but where there is an original act and a supplemental act, which is complete in itself, they are separate and distinct acts and must be so construed and interpreted.

If two statutes relate to the same subject matter and are not inconsistent they are said to be *in pari materia* and should be construed together, but this does not mean that the provisions, conditions or time limitations which are inserted in

one statute must be considered as necessary in another. *Goodwich vs. Russell*, 42 *N. Y.* 178, 184; *Rich vs. Keyser*, 54 *Pa. St.* 86; *Brown vs. Title and Trust Co.* 174 *Pa. St.* 443, 460.

The primary rule of statutory construction is that the words used shall be given their natural signification, and it has not been considered wise by the courts to depart from the plain and literal meaning of the words out of deference to some supposed legislative intention. *Priestman vs. United States*, 4 *Dall.* 28; *Hadden vs. The Collector*, 5 *Wall.* 107; *Dame's Appeal*, 62 *Pa. St.* 417; *Pittsburgh vs. Kalchthaler*, 114 *Pa. St.* 547; *United States vs. Coombs*, 12 *Pet.* 72; *Board of County Commissioners vs. Rollins*, 130 *U. S.* 662.

Applying these principles to this case, it seems clear that there is no warrant or authority for reading by implication the time limit into the statute. The words of the latter are clear and distinct. There is no ambiguity in them, and no room for construction or interpretation.

If the supplemental act is to be read into the original act and the two construed as one, it is difficult to see just where and how the limitations in the original act are to be applied to the supplemental act. The original time limitation cannot be applied directly, but it is necessary to imply a new proviso separate and distinct from the original one with different but analogous terms. The limitation must commence to run at a different date and must be held to operate under a different franchise. This might be done by the legislature, but certainly not by the courts.

II. The second proposition upon which it is sought to uphold the contention that the time limitation must be read into the supplementary act is based upon the words used in the latter part of that act.

After authorizing the railway company to erect a branch line, it is provided that, with respect to the said branch line, the corporation shall have and exercise all the "rights and privileges" and be subject all the "duties and responsibilities" prescribed by the original act. What are these "rights and privileges," "duties and responsibilities?"

It is the right and privilege of the respondent to operate its cars over its lines by any motive power except steam; to occupy public roads and bridges; to change from a single to a double track; to erect poles, wires, etc.; to condemn private property for a right of way; and other rights and privileges might be found in the original act.

Its duties are to obtain the consent of the authorities having supervision of the roads before using them for its railway; to build over-head or under-ground crossings where steam railroads are encountered; to comply strictly with the provisions of its charter when the right of eminent domain is exercised by it; its responsibilities are, *inter alia*, to make proper compensation to the owners of lands, but nowhere is it bound to build its line, nor could it be compelled to do so.

The limitation of time in the original charter was a condition precedent to the enjoyment of the franchise, but it was neither a duty nor a responsibility.

The rule of construing statutes according to the common and approved usage of language is enjoined in this State by statute. *Rev. Code* (1893) 42. The words in this statute upon which the present application is based are but two, duties and responsibilities.

The requirement that the Company should build and operate a line in a certain time was not within either term. It was a condition placed upon the grant and which must be performed before the right to build and operate the original line could vest in the grantees.

The construction given to the words "duties" and "responsibilities" by approved lexicographers, such as Webster, Worcester, Black, Brown and Bouvier, does not justify the contention which has been made in behalf of the complainant; that because there was a time limit in the original charter, the same should be applied with respect to the branch line. The words duties and responsibilities used in the supplemental act of 1895 can only refer to such things as the company was bound to do with respect to those who had some rights in the premises. Such is the sense in which these words are used in our own laws. 9 *Del. Laws* 23; 11 *id.* 371;

15 *id.* 244; 15 *id.* 249; 16 *id.* 181; 18 *id.* 389. In this connection we may profitably refer to the following cases. *Pacific Insurance Co. vs. Soule*, 7 *Wall.* 433. 445; *Brach vs. Boynton*, 26 *Vt.* 725, 733; *Kentucky vs. Dennison*, 24 *How.* 66, 107, *et seq.; Harrison vs. Bush*, 5 *El. & Bl.* 348, 349; *Fairbanks vs. Benjamin*, 50 *Vt.* 99.

III. In such cases as have arisen upon similar questions, the courts have refused to extend to the construction of branch lines the limitations placed upon the construction of a company's main line, unless the charter of the company expressly shows an intention that the limitations should apply to both. *Newhall vs. Galena & Chicago Union R. R. Co.* 14 *Ill.* 273; *A. & P. R. R. Co. vs. City of St. Louis*, 66 *Mo.* 228; *Morris & Essex R. R. Co. vs. Central R. R. Go. of N. J.*, 31 *N. J. L.* 205.

IV. If the supplementary act now under consideration be considered as an additional section of the original act, the two will form a charter analogous in many respects to charters granted by the Legislature of this State.

For example, the charter of the Wilmington City Ry. Co. provides for the construction of a line of railway over a designated route, and authorizes the construction of branches to points outside of the city, not more than six miles; it provides that, with respect to any railway thereafter erected or constructed, the corporation should have and exercise all the rights and privileges and be subject to all the duties and responsibilities which belong to or devolve upon it with respect to the railway to be originally erected, constructed, operated and maintained.

Then in another section it is made the duty of the corporation to build and equip its railway within a specified time. It is manifest that in that charter the limitation of time was simply upon the construction of the original railway, or what might be termed the main line, and that the time limitation did not extend and apply to the branch lines authorized. In view of the similarity of the charter now under consideration and that just referred to, it is a fair inference that the Legislature intended to confer upon the respondent company the

same rights which are already conferred upon the Wilmington City Railway Company.

V. The rule of construction so strongly urged for the complainant, that a charter is to be taken most strongly against a corporation, cannot be disputed, but we deny that it has any application to the present case. If the words of a charter are ambiguous and the right claimed is not clearly expressd, and can only be derived by implication, this rule applies. But here the words are clear, distinct and unambiguous. The question is solely whether the Legislature intended to place a time limitation upon a right clearly and distinctly given. To such a proposition the rule and citation referred to have no application.

This particular cardinal rule of construction helps our contention in this case rather than the contention of the complainant. The basis for the rule is that no company is authorized to imply the existence of any right or franchise. If the right or franchise claimed is not given in express terms it cannot be implied. It is a poor rule that will not work both ways. In the case before us the right and franchise to build the branch line is expressly given. The contention of the complainant is that a condition, a time limitation, must be implied. There is no more reason why the State has the right to read by implication a condition into the charter, than the company has to read by implication a particular franchise into the charter.

VI. If it should be considered that there is any ambiguity in the words used in the supplemental act, it is competent to consider the general legislative policy of the State with respect to the incorporation of railroad companies and acts authorizing the building of branch lines. That policy is to insert a time limit for the completion of the line, but it authorizes the construction of branch lines without a time limit. Acts authorizing the construction of branch lines without time limitation were passed in favor of *P. W. & B. R. R. Co.* 17 *Del. L.* 301; *Del. R. R. Co.* 17 *id.* 306; 19 *id.* 902; *W. & N. R. R. Co.* 17 *id.* 311; 18 *id.* 249 *Front & Union Ry. Co.* 19 *id.* 375; *W. & N. C. E. Ry. Co.* 20 *id.* 87.

While it appears that in numerous cases branch lines have been authorized without limitation of time, the authority to build them being conferred in many cases upon companies who were limited as to time for the construction of their main lines, there will be found an almost uniform adoption of the time limit with respect to the original construction of every railway line authorized by the Legislature. This is true in the case of the *W. & N. C. E. Ry. Co.* 19 *Del. Laws* 904; *W. & B. S. R. Co. id.* 912; *Middletown & Elkton Ry. Co. id.* 924, 932; *Gordon Heights Ry. Co. id.* 940; *Dover & Camden E. R. Co. id.* 912; *Southside Ry. Co.* 20 *id.* 569.

In the last cited act it is expressly provided that the main line of the railway company should be begun within nine months and completed within two years from the passage of the act, and with respect to branch lines it is provided that, having constructed the main line the company should have the right, *under like terms and conditions* to operate a branch line to Farnhurst Station, and also to the Delaware River.

Here it is submitted that an appropriate term to describe the time limit is used, to wit the word "condition", yet it is not possible that a court would construe the right of the South Side Railway Company to build its branch lines was intended to be limited to the time within which its main line would have to be constructed under the act. The legislative intent is so clear that the building and completion of its main line shall be taken as evidence of its intention in good faith to operate a railroad.

In the case of the Wilmington City Railway Company there was likewise a time limit as to the building of the original line and a power to build branches without limitation of time. 12 *Del. Laws* 426, 15 *id.* 239, 16 *id.* 167.

THE CHANCELLOR:—

The respondent operates a street railway by electricity under what is known as the "Trolley System," from a point near the boundary line of the City of Wilmington to a point on the Delaware river near the Gordon Heights Station, on the Philadelphia, Wilmington & Baltimore Railroad; and, for

the purpose of constructing, operating, and maintaining a branch line, it proposes to use and occupy the lands of the complainant situated in New Castle County, near the City of Wilmington, on both sides of the Wilmington and Philadelphia turnpike road, for a right of way for the said branch line, first acquiring the right by regular condemnation proceedings.

The complainants filed a bill in equity, April 28, 1898, to restrain the proposed entry upon their lands.

Upon the presentation of complainants' bill, I granted a rule to show cause why the preliminary injunction prayed for in said bill should not be granted.

The respondent has filed its answer, and the questions involved have been argued by the counsel for the respective parties upon the motion for a preliminary injunction. There are no questions of fact at issue, and the decision depends entirely upon the construction to be placed upon the two acts of the Legislature, from which, taken together, the respondent derives all its franchises, including the right to condemn and enter upon the lands of the complainant.

The original charter of the respondent granted May 2, 1893, 19 *Del. Laws, chapter* 713, authorized it to locate and construct its railway from "a point on the Delaware River at or near the Gordon Heights Station, on the P., W. & B. Railroad, to the northerly and northeasterly line of the City of Wilmington, or to any intermediate point or points within Brandywine hundred." It also provided that it might use and occupy, for a right of way, lands other than a public road, the right to use which had previously been acquired by gift, lease, or purchase, or by condemnation proceedings in the manner set forth and described in the charter. The charter contained also the following clause: "Provided, however, that the construction of the railway herein authorized shall be commenced within six months after the passage of this act, and it shall be completed, equipped and in operation within two years thereafter, otherwise this act shall become void, and all the rights, privileges and franchises herein granted shall

wholly cease and determine." The construction was completed within the time limited.

The supplement to this charter, passed May 6, 1895, 20, *Del. Laws, chapter* 91, is as follows: "Section 1. That the Gordon Heights Railway Co. shall be, and it is hereby authorized to locate, extend, construct, operate and maintain a branch line of railway from any point on its present line to any point selected by its board of directors in the Delaware and Pennsylvania state line, by such route as said board shall select after a careful survey, and shall have power to increase its capital stock to such amount, from time to time, as may be determined on, by issuing such amounts of common or preferred stock, or both, as may be deemed proper; provided, that said increase of capital stock shall not exceed the sum of seven hundred thousand dollars; and with respect to the said branch hereby authorized to be located and constructed, the said corporation shall have and exercise all the rights and privileges and be subject to all the duties and responsibilities which did or shall belong to or devolve upon said corporation, with respect to the railway originally located, constructed and maintained under the provisions of the act to which this is a supplement."

It is claimed by the complainants that the last mentioned act from which the respondent seeks to derive its right to condemn and enter upon the complainants' lands, has become void, and that all the rights, privileges, and franchises therein granted have wholly ceased and determined, because the branch line of railway for which it provides was not completed, equipped, and in operation within two years from the date of its enactment, which was May 2, 1895; and they assert that the intent of the legislature is plain that the additional privileges granted to the Gordon Heights Railway Company, by this supplementary act must be fully exercised within a period of two years from its passage. Respondent admits that the branch line of railway has not been completed within two years from the passage of the above mentioned act, but denies that the time for construction was limited.

There is no rule of construction more fixed and unyielding than that requiring strict construction of grants to corporations. Based upon sound considerations of public policy, and upon reasoning, which has never been questioned, it would be mere waste of words for me to discuss it at this late date, or to comment upon the many cases cited by the counsel for the complainants in support and illustration of the rule. It seems to be none too strongly expressed by Chief Justice Black, when he says: "In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation. This is the rule sustained by all the courts in this country and in England." *Pennsylvania R. Co. v. Canal Com'rs*, 21 *Pa. St.* 9, 22.

Indeed, the learned counsel for the respondent does not seek to question or qualify the rule, but in hs remarkably able and ingenious argument seeks to show by subtle definition and analysis of the words "rights and privileges, duties and responsibilities," as used in the act of May 6, 1895, that they cannot be intended to include that provision in the original act which requires the railway to be completed, etc., in two years from its passage. The learned counsel also seeks to strengthen his position by citing a number of acts of the Delaware Legislature incorporating branch lines of railroad which provided no limitation as to the time of construction, although such limitation was contained in the act incorporating the main line, thus indicating a general legislative policy in this respect.

Can such reasoning lead legitimately to the conclusion that the act of May 6, 1895, had the effect of granting to the Gordon Heights Railway Company, the respondent in this suit, the right to build the branch line which it proposes to construct across the lands of the complainants, absolutely and without the limitation as to time of construction which was contained in the original charter to which the supplementary act refers? The answer can be found only in the language of the acts themselves. "All the rights and privileges" granted in the original charter were granted upon the condition which we have already cited. It was expressed as

follows: "Provided, however, that the construction of the railway herein authorized shall be commenced within six months after the passage of this act, and it shall be completed, equipped and in operation within two years thereafter, otherwise this act shall become void, and all the rights, privileges and franchises herein granted shall wholly cease and determine." Is not this grant of rights, privileges, and franchises a grant "on condition expressed in the grant itself"? Does not Blackstone's definition of an estate upon condition serve as its definition? that is, "when an estate is granted, either in fee simple or otherwise, with an express qualification annexed, whereby the estate granted shall either commence, be enlarged, or be defeated, upon performance or breach of such qualification or condition." 1 *Bl. Comm.* 154. If such be the case, what construction should be placed upon the grant of rights and privileges expressed in the supplementary act (chapter 91, vol. 20)? It says: "And with respect to the said branch hereby authorized to be located and constructed the said corporation shall have and exercise all the rights and privileges, and be subject to all the duties and responsibilities which did or shall belong to or devolve upon said corporation with respect to the railway originally located, constructed and maintained, under the provisions of the act to which this is a supplement." Under the rule of strict construction of corporate grants to which we have referred, can this be construed to enlarge the original grant so as to operate as an unconditional grant of rights and privileges, when the rights and privileges which were granted in the original act were conditioned in the manner we have seen, and that too, when the condition attached to the original grant is a most important one, it being obvious that an unconditional grant of the power to build a railway at any time in the future, that the grantee of the power might see fit, is a very much more valuable grant than one conditioned upon its construction within two years?

I am clearly of opinion that it cannot be so construed; that the respondent possesses in this respect only the power it possessed under the original act; and that it would be im-

possible to put any other construction upon the grant of powers contained in the supplementary act without unsettling all the rules of construction governing the interpretation of legislative grants of franchises. In other words, the rights and privileges possessed by the corporation respondent, under the terms of the original act, and the duties and responsibilities to which it was made subject by that act, being neither altered nor enlarged by the supplementary act, it must be held that it rested under the obligation to complete, equip, and put in operation the branch line within two years after the passage of such supplementary act, in the same manner as it had rested under the obligation to complete the main line within that period after the passage of the original act. It being admitted that this was not done, it follows that the respondent has forfeited the right to condemn and enter upon complainants' lands; and I will therefore grant the motion for a preliminary injunction as prayed for in the bill.

And it was accordingly so ordered.