## 22253.  GEORGIA POWER COMPANY v. OCONEE ELECTRIC MEMBERSHIP CORPORATION.

QUILLIAN, Justice.  Georgia Power Company (hereinafter referred to as Georgia) brought its equitable suit in Laurens Superior Court against Oconee Electric Membership Corporation (hereinafter referred to as Oconee) seeking a temporary and a permanent injunction against Oconee in order to prevent the defendant from furnishing its own office building and facilities with electrical energy by extending its distribution line into an area where Georgia was serving.  The petition alleged that such action on the part of Oconee was in violation of the law and of paragraph # 11 of a WR-5 (wholesale electric) contract between the parties.

Exception is taken by Georgia to the overruling of its demurrers to Oconee's answer, which set out that paragraph # 11 did not apply to the circumstances of this case and that even if it did Oconee had not violated any of its provisions; and to the denial of Georgia's prayers for injunctive relief against Oconee.

The applicable provisions of paragraph # 11 of the WR-5 contract read:  "Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall duplicate the other's facilities, except insofar as such duplication shall be necessary in order to transmit electrical energy between unconnected points on its lines.  Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall distribute or furnish electrical energy to anyone who, at the time of the proposed service, is receiving electric service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system; provided, however, the Company [Georgia] shall have the right to serve direct any unserved or new customer, having a demand of 100 kilowatts or more, when Company is requested to do so by such customer."  *Held:*

1. The controlling question for determination is whether the prohibitory provisions of paragraph # 11 apply to either party where such party proposes to utilize a private line to serve itself.

We can discover no express prohibition in the contract which would prevent Oconee from consuming or utilizing electrical

energy which it purchased from Georgia. In fact, the very purpose of the contract as stated in the first paragraph is: "the Company [Georgia] agrees to furnish to the Customer [Oconee], and the Customer agrees to receive from the Company and to use, and pay for all electrical energy that shall be required by the Customer for the operation and maintenance of its electrical distribution system." It may readily be demonstrated that some power, of necessity, would be needed by the Customer in the operation and maintenance of its electrical distribution system other than that which it would furnish and distribute to its member customers.

In *Central Ga. &c. Corp. v. Ga. Power Co.*, 217 Ga. 171, 173 (121 SE2d 644), this court held in reference to paragraph # 11: "The entire paragraph deals with duplication of electric service, transmission lines, and service to premises and customers." We are led to conclude that the plain and unambiguous intent of paragraph # 11 is to prevent ruinous and futile competition between Georgia and Oconee for customers, and not to prevent either from serving itself. Nothing to the contrary is found in *Ga. Power Co. v. Altamaha Rural &c. Corp.*, 217 Ga. 376 (122 SE2d 250), and indeed the reasoning in that case gives further support to our conclusion, for there this court applied the paragraph in question under circumstances where Georgia, by duplication and paralleling of the Co-op's lines, attempted to serve an applicant or prospective customer in an annexed area whose premises were capable of being served by the Co-op by a service drop of less than 300 feet in accord with Ga. L. 1960, p. 5 (*Code Ann.* § 34A-102 (8)). There the competition aspect of Georgia's action was determinative of this court's decision.

Oconee contends that the line which it extended into an area where Georgia was serving was to be used for monitoring Oconee's distribution lines, for supplying electrical energy necessary to the operation and maintenance of its distribution system, and was not in any manner intended or to be used for serving others. Strictly construing the contract as against the party who prepared it, we can find no reasonable basis to conclude that paragraph # 11 applies to the instant averments, or otherwise prohibits the use of a purely private line by either Georgia or Oconee.

The fact that Oconee's office building was formerly served by Georgia under a B-9 (retail electric) contract, which con-

tract is admittedly terminated, has no application to our construction of the WR-5 contract. The argument of counsel for Georgia that Oconee, by its actions under the B-9 contract, construed the WR-5 contract as prohibiting its proposed service to its office is not meritorious. Actions under another and entirely unrelated contract (from a legal standpoint) can not be considered in construing the contract in question.

2. We are cognizant of *Code Ann.* § 34A-103 (Ga. L. 1937, pp. 644, 645) which provides that a Co-op may furnish "electrical energy to persons in rural areas who are not receiving electric service from any corporation subject to the jurisdiction of the Georgia Public Service Commission, or from any municipal corporation." This statute does not prohibit a Co-op from using electrical energy itself in order to furnish its member customers with electrical service.

3. The above syllabuses dispose of the grounds of general demurrer. The special demurrers are without merit, except the special demurrer contained in paragraph 12 of the original demurrers should have been sustained. The fact that Oconee has a franchise from the Town of Dudley to furnish electricity to customers within the town limits is irrelevant and immaterial to the issues of the case.

4. We now consider the denial of the interlocutory injunction. There was evidence that Oconee extended its distribution line only for private purposes and that it would not furnish electrical energy to its office until the B-9 contract had been terminated. Oconee, through its agent, disavowed in open court any intent to serve others and thereby renounced any right to utilize the line for any purpose other than supplying necessary electrical energy for its office facilities. Furthermore, the trial judge properly continued the restraining order until after the expiration of the B-9 contract and granted an injunction as to the line in question being used for anything other than private purposes. Hence, the trial judge did not err in denying the prayers for interlocutory injunction which would have enjoined Oconee from furnishing its own office, solely, with electrical energy.

*Judgments affirmed in part; reversed in part. All the Justices concur, except Duckworth, C. J., Head, P. J., and Candler, J., who dissent.*

Argued November 12, 1963—Decided January 14, 1964— Rehearing denied February 10 and February 18, 1964.

*R. M. Daley, Wm. M. Towson, Wallace Miller, Jr., Troutman, Sams, Schroder & Lockerman, Tench C. Coxe,* for plaintiff in error.
*Nelson & Nelson, Carl K. Nelson, Jr., W. W. Larsen, Jr.,* contra.
*Robt. D. Tisinger,* for party at interest not party to record.