ROBERTSON, Justice:
This is an appeal from the Decree of the Chancery Court of the First Judicial District of Hinds County, Mississippi, affirming the Order of the Mississippi Public Service Commission granting a Certificate of Public Convenience and Necessity to Petitioner, Mississippi Power and Light Company, to construct facilities and distribution lines in Wilkinson County in order to meet the electrical requirements of Cameron Operating Company in its oil field operations.
Southwest Mississippi Electric Power Association protested on the ground that a contract entered into on October 20, 1954, by the Mississippi Power and Light Company, hereafter referred to as the “Company”, and Southwest Mississippi Electric Power Association, hereafter referred to as the “Association”, was void ab initio because it violated the anti-trust laws of Mississippi, Sections 1088, 1089 and 1093, Mississippi Code of 1942, Annotated, and could not be recognized by the Commission as the basis on which to grant certificates of public convenience and necessity.
In order to place this contention in proper perspective, it is necessary to review the facts precedent and subsequent to this contract.
In 1954, a need arose for electric service for the oil field pumping requirements of the various companies then exploring for and producing oil in certain areas of southwest Mississippi. Company and Association did have facilities in these areas which could be utilized in furnishing such electric service. In a spirit of cooperation and in an effort to adequately and economically serve said oil field pumping loads in certain areas of Adams, Jefferson and Wilkin *828 son Counties, Company and Association entered into the agreement of October 20, 1954, whereby each utility agreed to render electric service to certain oil fields as set out in the agreement. The agreement contained this clause:
“This letter agreement is subject to any valid order, rule or regulation of any court or regulatory body and is binding upon the successors or assigns of the parties hereto.”
After passage of the Public Service Commission Act in 1956, Sections 7716-01 through 7716-38, Mississippi Code of 1942, Annotated (Recompiled 1956), Company and Association each made application for grandfather rights on an area basis in accordance with the provisions of Section 7716-05(b). Each incorporated in its application the agreement for oil well pumping service. At the suggestion and request of the Commission, Company and Association worked out an agreement regarding the various service areas and operating rights to which each utility felt it was entitled under Section 5(b). The investigations and studies of Company and Association resulted in the agreement of April 4, 1958. In addition to showing the boundary lines defining the respective grandfather service areas of Company and Association, the agreement recognized the right of Company and Association to serve the requirements of consumers in the various oil fields that each was or might be entitled to serve on the effective date of the Act. The agreement of April 4, 1958, was submitted to the Commission as the recommendation of Company and Association for defining and delineating their areas and rights under Section 5(b), with the request that the Commission find that the public convenience and necessity required the allocation of the areas and operating rights as set out therein.
After a hearing on Company’s application in Cause U-44, the Commission on December 3, 1958, issued to Company’s predecessor a partial and interim certificate of public convenience and necessity for those operations which it was performing on the effective date of the Act. In its Order, the Commission found that under Section 5(b) of the Act the Company was entitled to service the oil field pumping requirements as defined and described in the agreement of April 4, 1958. Prior to the Order of December 3rd, Company filed with the Commission various petitions requesting certificates of public convenience and necessity to render service to various oil fields and always referred by way of description to its letter agreements of October 20, 1954, and April 4, 1958. In those petitions filed after December 3, 1958, the Company would refer to the two letter agreements and the Order in U-44 in describing the rights requested. The Commission in each instance specifically found that the public convenience and necessity required the issuance of a Certificate to the Company for the construction and service requested. Association recognized the right of Company to render the oil field service requested in each petition and did not protest or object.
In the instant case, Company requested a certificate of public convenience and necessity to construct facilities and build distribution lines in order to furnish electricity to an oil well lying within the oil field area allocated to Company and described in the agreement referred to by the Commission in its Orders, but within the geographical area allocated to Association. Association protested the granting of the Petition on the ground that the oil well pumping agreement was void as being in violation of the antitrust laws of Mississippi.
In the Act of 1956, the Mississippi Public Service Commission was granted exclusive original jurisdiction over the intrastate business and property of public utilities as defined in the Act; it was thus made the sole regulating body for utilities. In fact the legislature made crystal clear the power and authority of the Commission in *829 its particular field of work when it declared :
“In all actions and proceedings arising under the provisions of this act or growing out of the exercise of the authority and powers herein granted to the commission, the burden of proof shall be on the party seeking to vacate an order of said commission.” Section 7716-31.
Under Section 5(b) of the Act, the Commission had the duty, responsibility, power, authority and jurisdiction to determine the geographical areas and operating rights that each utility was entitled to on the effective date of the Act.
The Commission, as it had a right to do, called on the Company and the Association as experts in their field for help in determining what areas and rigjits each was entitled to under Section 5(b). These were matters peculiarly within the knowledge of Company and Association alone. They responded and advised with the Commission. The cooperation and joint efforts of the Commission, Company and Association resulted in the Order of December 3, 1958, in Cause U-44 for the Company, and the Order of June 10, 1958, in Cause U-75 for the Association. Rather than including the detailed descriptions and maps contained in the agreement of April 4, 1958 in each of these Orders, the Commission referred to the agreement for descriptions and locations of the various oil field requirements. The so-called agreement was thus merged into and superseded by the Orders of the Commission in each instance.
It is the action and decision of the Commission as contained in each Order that gives validity and vitality to the allocation of oil field pumping rights to the Company and Association, rather than any contract or agreement between them.
The Commission in Cause U-44 for the Company and Cause U-75 for the Association made this finding:
“All facilities and equipment lawfully constructed, acquired, extended and operated since the effective date of said Act in said Counties are approved and it is found that the present and future public convenience and necessity require and will require the operation of same.”
The Commission thus fulfilled the duties and responsibilities specifically placed upon and required of it by statute. It had the authority and it was within its assigned jurisdiction to do that which it did do. •
The Order of the Commission as to Cameron Operating Company is supported by substantial evidence, and we affirm the judgment of the Chancery Court in approving and affirming the Order of the Commission.
Affirmed.
GILLESPIE, P. J., and RODGERS, PATTERSON and SMITH, JJ., concur.