218 So.2d 707 (1968)
CAPITAL ELECTRIC POWER ASSOCIATION, Appellant,
v.
MISSISSIPPI POWER & LIGHT COMPANY et al., Appellee.
No. 45126.
Supreme Court of Mississippi.
December 23, 1968.
Rehearing Denied February 24, 1969.
*709 Hedgepeth & Hedgepeth, Jackson, for appellant.
Wise, Carter & Child, Earl T. Thomas, Cecil F. Travis, Green, Green & Cheney, Jackson, for appellee.
Eaton, Cottrell, Galloway & Lang, Gulfport, also O.F. & J.O. Moss, Lucedale, amicus curiae.
Leon L. Porter, Jr., Clarksdale, Michael D. Haas, Bay St. Louis, Wall Doxey, Jr., Holly Springs, O.F. & J.O. Moss, Lucedale, Lott & Sanders, Greenwood, Pittman, King & Pittman, Hattiesburg, Floyd, Cameron, Deen & Prichard, Meridian, William Threadgill, Columbus, Cohn, Hobbs & Hobbs, Brookhaven, John K. Keyes, Collins, Everett G. Truly, Natchez, Albert V. Miller, Rolling Fork, Griffin Norquist, Yazoo City, amici curiae, for appellant.
BRADY, Justice:
This is an appeal by Capital Electric Power Association, an electric cooperative, from a final decree of the Chancery Court of the First Judicial District of Hinds County, Mississippi, which vacated a cease and desist order that had been issued by the Mississippi Public Service Commission against Mississippi Power & Light Company, an investor-owned Mississippi Corporation. This is another foray of a combat which apparently like Tennyson's brook goes "on forever" between two implacable utility behemoths.
The case at bar began on November 27, 1961, when Capital Electric filed a petition, Public Service Commission Docket No. U-652, for a cease and desist order against Mississippi Power & Light Company, hereinafter referred to as Company. The facts pertinent to that petition are: On September 19, 1956, Capital Electric filed a petition with the Public Service Commission pursuant to Section 5(b) of Chapter 372, Mississippi Laws of 1956, commonly referred to as the "grandfather clause" of the Public Utilities Act, Section 7716-05 of the Mississippi Code of 1942 Annotated (1956), seeking a certificate of public convenience and necessity to serve areas it had been serving on March 29, 1956, the effective date of the Act. This certificate was granted Capital Electric on September 21, 1959, in Docket No. U-84. The area in dispute in the case at bar, including the land upon which Whittington Hall, a dormitory of Mississippi College, was constructed, falls within the description of the *710 area granted to Capital Electric by this certificate. On November 25, 1959, respondent, Company, was granted an interim and partial certificate giving "grandfather" rights to a service area adjoining the area in dispute and also rights to continue to serve among other cities the City of Clinton. The certificates were granted according to an agreement between Company and Capital Electric after extended and exhaustive discussion. No appeal was taken from the decision in U-84 and the time for an appeal has expired.
In 1924 Company received from the City of Clinton a twenty-five year electric franchise to provide electric service to the City. Company served the City of Clinton under this 1924 franchise until Company was granted another twenty-five year non-exclusive municipal franchise by the City of Clinton on December 16, 1946. Section 7716-05(g) of the Mississippi Code of 1942 Annotated (1956) states that before a utility may be granted permission to operate in a municipality it must first get a franchise granted by the municipality. In 1956 Capital Electric applied for and was denied a franchise by the City of Clinton. On October 7, 1961, the corporate limits of Clinton were extended to include a part of the area in dispute in the case at bar including the site of Whittington Hall.
Company also has a ninety-nine year franchise for Hinds County granted by the Hinds County Board of Supervisors on January 3, 1928. This non-exclusive franchise includes the construction and operation of electric distribution systems and an easement for erecting lines and facilities over streets, alleys, bridges and other public places. On October 5, 1938, and February 10, 1939, the Hinds County Board of Supervisors granted Capital Electric a similar easement.
Sometime in the middle of October, 1961, Company constructed an 8 kv distribution line to a pole some 330 feet within the area described in Capital Electric's certificate on property belonging to Mississippi College within the newly annexed corporate limits of Clinton and there installed a transformer and provided construction power for Whittington Hall, a dormitory being constructed by Mississippi College. This line was later converted to a 13 kv line for permanent service to the dormitory. On July 6, 1961, the Commission in Docket No. U-525 entered an order that Company cease and desist rendering electric service in a recently annexed area of the City of Clinton. The proceedings in the case at bar were stayed pending the outcome of an appeal of the above cited order. The Mississippi Supreme Court in Capital Electric Power Association v. Mississippi Power & Light Company, 250 Miss. 514, 150 So.2d 534 (1963), and Delta Electric Power Association v. Mississippi Power & Light Company, 250 Miss. 482, 149 So.2d 504 (1963), certiorari denied in both cases, 375 U.S. 77, 84 S.Ct. 196, 11 L.Ed.2d 142 (1963), held that municipal ordinances were of a local nature embracing only that area included within the municipality at the time of their passage and that Company had no right based upon their municipal franchises to extend service to the newly annexed portions of the Cities of Clinton and Winona.
In its original answer filed on December 29, 1961, Company had based its rights to provide service to Whittington Hall primarily on its municipal franchise with the City of Clinton. On June 21, 1963, company filed an amended answer predicating its case mainly on its "grandfather" rights to continue to serve its customer, Mississippi College.
Company's certificate permitted it "to continue to serve all customers that Mississippi Power & Light Company was serving on March 29, 1956, and all that it has since legally begun to serve both within and without the area granted to it * * *." Company has been serving the electric requirements of Mississippi College since 1924 under previous contracts. Company is presently serving Mississippi College under a contract with the College dated January 1, 1960. The original five year period *711 of the 1960 contract has been automatically extended according to the terms of the contract for a second five year period. No old contracts between Company and Mississippi College exist which would show the extent of the previous coverage of electric facilities because the contracts were destroyed in accordance with the Federal Power Commission's Rules which permit the destruction of such contracts after an interval of twelve months after they have expired or are no longer effective.
On June 17, 1964, Company filed a second amended answer alleging that it owned no electric facilities within the certificated area of Capital Electric. On March 3, 1964, after the decisions in the Clinton and Winona cases, Company at the request of the attorney for the College sold to the College the electric facilities which were in Capital Electric's certificated area. The sale is evidenced by a canceled check from Mississippi College to Company dated March 5, 1964, in the sum of $2750.00.
Whittington Hall is situated on what has been referred to as a contiguous tract of land, part of which is in the area designated in Capital Electric's certificate and part of which is within the area certificated to Company. Whittington Hall is some 330 feet within the certificated area of Capital Electric. "Contiguous" is defined as a tract of land which is not cut by any public street or road. The so-called contiguous tract discussed in the case at bar is actually cut by private streets owned by the College. The tract under discussion is bounded by Capital Street on the west, by College Street on the north, by New Prospect Street (McRaven Road) on the East and Highway Eighty on the South. Within the area bounded by these roads there are two meters of Company  one serves the football field at a special rate and the other serves the buildings. The meter serving the buildings on this tract is on the west side of Capital Street. There is a meter on Whittington Hall; however, this meter was installed to check the amount of electricity that was used at the dormitory and was not for billing purposes. There are two other meters on property belonging to the College. One serves the house of Dr. McLemore, the President of Mississippi College, and another serves the married students' barracks. The area where Whittington Hall is now located was, until about 1959, served by Company in that Company rendered service in that area to a band hall and house.
Of the 311 acres owned by College 79% lies in Capital Electric's service area and 21% in Company's. Much of the land in Capital Electric's area has been acquired since the Act was passed in 1956. The College's "Plan For The Sixties" shows that Whittington Hall is the first of nine buildings planned in Capital Electric's service area. Appellees contend that the "Plan" has been set aside in favor of improving the quality of education at the College.
The Commission issued its cease and desist order on July 12, 1965, directed against Company alone, covering approximately 88.9 acres certificated to Capital Electric in Hinds County, Mississippi, described as:
Beginning at a point in said City of Clinton which is the point of intersection of the center line of New Prospect Street with the boundary of the corporate limits of said city as extended effective February 5, 1948; run thence westerly along the south boundary line of the corporate limits of the City of Clinton as extended effective February 5, 1948, to the southwest corner of said corporate limits as extended effective that date; run thence westerly along the south boundary line of the corporate limits of said city as extended effective March 25, 1960, and a projection thereof to a point where the same intersects the center line of U.S. Highway 80; thence northwesterly along the center line of U.S. Highway 80 to its intersection with the west line of the E-1/2 of the NW-1/4 of the SE-1/4 Section 30, Township 6 North, Range 1 West, Hinds County, *712 Mississippi; thence southerly along said west line of the E-1/2 of the NW-1/4 of said Section 30 to the south line of the N-1/2 of the SE-1/4 of said Section 30; thence easterly along the south line of the N-1/2 of the SE-1/4 of said Section 30 and the N-1/2 of the SW-1/4 of Section 29, Township 6 North Range 1 West, Hinds County, Mississippi, to the center line of McRaven Road; thence northerly along the center line of McRaven Road and New Prospect Street to the point of beginning.
Both Company and College appealed. The chancery court rendered its opinion on January 29, 1968, and the final decree was entered February 21, 1968, reversing the order as to 15.9 acres, the area north of Highway 80 within the area certificated to Capital Electric. The court found that Company had no "grandfather" rights to this area, but that the order of the Commission violated the constitutional rights, including the due process clauses of State and Federal Constitutions, of Mississippi College. The chancery court held that the College had the right to serve itself within Capital Electric's certificated service area.
The case at bar came to be heard before this Court after numerous and sundry pleadings and orders below which we find unnecessary to discuss here. In addition to the briefs of appellant and appellee filed in the Supreme Court, there were amici curiae briefs filed by Mississippi College, by Mississippi Power Company and by thirteen attorneys for various power associations in the state. The City of Clinton also had filed a pleading below, which was stricken after the decision in the Winona and Clinton cases. Thereafter the City declined to plead further. Appellant assigns some nineteen errors; however, the issues raised can be distilled into the following relevant questions:
1. May Mississippi College buy electric energy at a point in Company's certificated area and transmit that energy over its privately owned line on a contiguous tract of land to a building in an area certificated to Capital Electric where the electricity is used without being remetered or resold? Is it a violation of the constitutional rights of the College to forbid this action by the College?
2. Does Company have a right to serve the disputed area based on the right included in its "grandfather" certificate to continue to serve any customer it was serving on the effective date of the Act whether within or without the area certificated to it?
3. Does Company have a right to serve the disputed area, which was annexed to the City of Clinton in 1961, because of the right granted by its 1959 certificate to serve the City of Clinton under its 1946 franchise from the City of Clinton?
4. Does Company have a right to serve the disputed area based on its 1928 non-exclusive franchise to service Hinds County granted by the Hinds County Board of Supervisors?
One final side issue is presented by the appellee: Was it error for the Commission to exclude all testimony regarding rates at the trial of this cause before the Commission?
A certificate of convenience and necessity which is granted to a utility by the Public Service Commission pursuant to Section 7716-05 Mississippi Code 1942 Annotated (1956) is a valuable right which should be protected by the courts. Capital Elec. Power Ass'n v. Miss. Power & Light Co., 250 Miss. 514, 150 So.2d 534 (1963) commonly referred to as the "Clinton case." This Court has repeatedly held that "grandfather" certificates awarded under Section 5 are on an area, not a facility basis. "Clinton case," supra, and the "Winona case," Delta Elec. Power Ass'n v. Miss. Power & Light Co., 250 Miss. 482, 149 So.2d 504 (1963), cert. denied, 375 U.S. 77, 84 S.Ct. 196, 11 L.Ed.2d 142 (1963). Since the "Elton case," Capital Electric Power Association v. Mississippi Power & Light Company, 240 Miss. 139, 125 So.2d 739 (1961), one of the first cases decided *713 by this Court under the Public Utilities Act, sections 7716-01 et sequitur Mississippi Code 1942 Annotated (1956), the policy of "territorial integrity" of service areas has clearly been recognized by the Public Service Commission and by this Court.
One of the primary objectives of the Act is to prevent duplication of facilities and services. A utility has the express right and duty to provide service within its certificated area. To allow invasion of a certificated area because of the desire of a customer to be served by another utility would cause wasteful duplication and undermine completely the purpose of the Public Utility Act. "Elton case," supra.
The fundamental issue presented here for determination is: Can Company and College collaborating vitiate this specific purpose of the Act by the Company selling its facilities within Capital Electric's certificated area to College and then continuing to sell College electricity at a metering point in Company's certificated area from which it is transferred over College's recently purchased line to a building on a continuous piece of property in Capital Electric's certificated area where it is consumed without being resold or remetered?
This is the first time that this precise question has been before this Court. A study of cases from sister states provides persuasive precedents for our consideration. In Holston River Electric Company v. Hydro Electric Corporation, 17 Tenn. App. 122, 66 S.W.2d 217 (1933) Hydro Electric and Hawkins County Creamery executed a contract whereby Hydro Electric sold the creamery electricity at a point outside the town. This electricity by the use of a line owned by Creamery was transmitted for use within the municipality where Hydro Electric did not have a franchise. The Tennessee Court refused to approve such a plan and referred to it as a subterfuge. There are some minor features which distinguish the Holston case from the case at bar: (1) The creamery was a new customer of Hydro Electric; (2) The right-of-way purchased by the creamery crossed at least one public street. However, several points from that case are persuasive in the case at bar: (1) The place of delivery of the electric current does not control, but rather the place and purpose of the use of that energy. (2) To allow such a device would be to take property of Holston River Electric without the requisite due process of law. Similar designs have been struck down by courts and public service commissions in several states. Re Arizona Edison Co., 61 P.U.R. (n.s.) 5 (Ariz.Pub.Serv.Comm'n 1945) [the "user" constructed his own line]; Union Telephone Co. v. Tipton Telephone Co., 1933C P.U.R. 285 (Ind.Pub.Serv. Comm'n 1932); Incorporated Town of Ackley v. Cent. States Elec. Co., 204 Iowa 1246, 214 N.W. 879, 54 A.L.R. 474 (1927) [the creamery, located in the town, purchased a private right-of-way upon which to build its line to connect with the canning company's line and thus indirectly tie into the electric company's line outside the town]; Town of Coushatta v. Valley Elec. Membership Corp., 139 So.2d 822 (La. Ct. App. 1961) [same result whether the line from the meter to the service location did or did not cross a public street or road].
Appellant's argument that these cases are totally inapplicable because (1) these are new customers and (2) because there is no contiguous land involved is not persuasive and will be discussed further hereinafter. Cases cited by appellee disclose that some states for various reasons may possibly allow actions such as those of appellees in the present case. Company urges Arkansas Power & Light Company v. West Memphis Power & Water Company, 190 Ark. 594, 79 S.W.2d 991 (1935) as controlling. This case is clearly inapplicable because the petitioner in that case was found not to be capable of furnishing the type of service required. There is no comparable finding in the case at bar. The fact that the Mississippi caselaw regarding "territorial integrity" differs so sharply from Pennsylvania's rules regarding non-exclusive service area rights distinctly distinguishes Northwestern Mining & Exchange *714 Company v. West Penn Power Company, 61 P.U.R. (n.s.) 186 (Penn.Pub.Util. Comm'n 1945), and Borough of Schuylkill Haven v. Pennsylvania Power & Light Company, 3 P.U.R. (n.s.) 127 (Penn.Pub. Util.Comm'n 1934). Georgia Power Company v. Oconee Electric Membership Corporation, 219 Ga. 690, 135 S.E.2d 328 (1964) did not relate to a certificated service area. A careful reading of the respective Acts involved in Williams Electric Cooperative, Incorporated v. Montana-Dakota Utilities Company, 5 P.U.R.3d 108 (N.D. Pub.Serv.Comm'n 1954) and Rural Electric Company v. City of Burley, 89 Idaho 112, 403 P.2d 580 (1965) restricts the applicability of these cases to a case arising under our Public Utilities Act.
The fact that Mississippi College has been a customer of Mississippi Power & Light for many years would go only to the question of "grandfather" rights of the Company and not to the right of the College to serve itself by the stratagem presently in use. A customer does not have a right to choose what utility to purchase service from. "Elton case," supra.
We agree with appellee's contention that electricity is property. However, a state may under its police power regulate, as was done by the Public Utilities Act, how property may be used. The controlling factor herein is that the electric current is used within Capital Electric's certificated area to provide electrical energy to a building completely within that service area. The fact that the current is metered in Company's service area does not negate this result. Likewise the fact that this is a continuous tract of land uncrossed by any public street or road does not give College and Company the right to encroach upon the exclusive service area of Capital Electric and thus deprive it of a valuable property right without due process of law. Also the fact that Mississippi College, the consumer, is not a "public utility" within the meaning of the Act does not affect the authority of the Commission to issue a cease and desist order against Company which unarguably is a "public utility" under the Act.
While East Mississippi Electric Power Association v. Mississippi Power & Light Company, Hinds County Chancery Court No. 64,353 (March 12, 1965), commonly called the "Suire case," is not controlling here, nevertheless the case is distinguishable from the case at bar in several aspects:
1. The customer built his own line.
2. This was a small temporary service and the permanent service could be legally supplied by respondent.
3. Only a small private service was involved. The line demarcating the two certificated areas passed through Suire's lot dividing it into the two service areas. Therefore, we hold that the "Suire case" is distinguishable and does not control the issues in the case at bar.
We further hold that Mississippi College was not denied due process since it was given the right both below and in this Court to file briefs and to be heard, which it utilized fully. We likewise cannot agree with appellees' allegation that to deny Company's service to the college would violate the impairment of the contract clause of the State and Federal Constitutions. The contract entered into by College and Company in 1960 subsequent to the passage of the Act in 1956 certainly would not be paramount to that legislation. [See for comparison the "Winona case," supra, and the "Clinton case," supra.]
The explicit policy under our Act has been one of "exclusive" service area. If Mississippi Power & Light cannot serve Whittington Hall directly, certainly to do so indirectly would be a violation of the Act. Any right to serve Whittington Hall must come from rights statutorily possessed by Company. Therefore, we must next consider whether Company has any right to serve the disputed area based upon the right included in its "grandfather" certificate to continue to *715 serve any customer it was serving on the effective date of the Act whether within or without the area certificated to it. Cases such as the "Winona case," supra, and the "Clinton case," supra, have stated metronomically that "grandfather" certificates are awarded under Section 5 on an area rather than a facility basis; however, the principal of the "frozen customers" has been recognized by this Court in East Mississippi Electric Power Association v. City of Louisville, 250 Miss. 777, 168 So.2d 287 (1964). Appellee contends that it is entitled to continue to serve Mississippi College as a "frozen customer" which it was serving on the effective date of the Act. The term "frozen customer" is unfortunately susceptible of an interpretation which could do much damage to the policy of the Act. It suggests for example that a utility which was serving a customer on the effective date of the Act in one location could follow that customer into other areas over the state to new locations. This could lead to endless duplication of facilities and make a complete sham of the Act. The term "frozen customer" can more appropriately be defined by the words "frozen service."
Whittington Hall is a new service, not one which was furnished at the time that the Act went into effect. Although Company had previously served two buildings where Whittington Hall is located, that service was terminated in 1959. The "frozen customer" concept was formed to allow utilities to continue to provide service where it had distribution equipment and was providing adequate service on the effective date of the Act. It does not apply to the building of new lines to new facilities. This could lead to useless duplication.
Southwest Mississippi Electric Power Association v. Mississippi Power & Light Company, 199 So.2d 826 (Miss. 1967) is not applicable to the case at bar because in that case there was an overlapping of service area, which was specifically allocated and described by area in the certificate by reference to the written agreement entered into by the two utilities.
We further find that no state or federal constitutional rights of Company have been violated. A careful balancing of the rights of all the parties leaves no doubt that those of Capital Electric are paramount.
The earlier contention that Company had a right to serve the disputed area, which was annexed to the City of Clinton in 1961, because of the right granted by its 1959 certificate to serve the City of Clinton under its 1946 franchise from the City was clearly denied by the "Clinton case," supra, and the "Winona case," supra.
The contention that Company had a right to serve the disputed area based on its 1928 non-exclusive franchise from the Hinds County Board of Supervisors is untenable. As stated by Chancellor Haynes in his opinion in the case at bar: "[C]ounties are creatures of the State, and have no powers to do or perform any acts except those authorized by statute or vested by necessary implication." Jefferson Co. v. Grafton, 74 Miss. 435, 21 So. 247, 36 L.R.A. 798 (1897). While a county may by implication have the authority to grant easements over, under or across roads and public places, such authority cannot possibly be expanded to include the granting of electric franchises, which a county has no authority to do either by statute or by necessary implication.
Furthermore if, as appellant urges, we should hold that appellant is entitled to render the services in a portion of the area embraced within the city extension of Clinton and in the area lying within the certificated area of appellee, we would be placed in the incongruous position of violating the express mandate of Section 7716-05(d) Mississippi Code of 1942 Annotated (1956) which specifically requires utilities who are serving a customer in a municipality to remain within their certificated area. This is true even though the appellee does not hold a franchise from the city covering the *716 area in question for the reason that the Act provides that where a utility has requested the granting of a franchise and has been arbitrarily refused, it is nevertheless not prohibited thereby from serving customers in its designated area.
We also find no merit in the contention that the Commission erred in refusing to admit testimony regarding rates. The Act provides adequate and explicit remedies for disputing allegedly excessive rates and this method so set out should be used. A case such as the one at bar is not the proper vehicle to determine a rate issue.
For the foregoing reasons we reverse the decision of the court below and reinstate the cease and desist order of the Public Service Commission.
Reversed and order of Public Service Commission reinstated.
ETHRIDGE, C.J., and RODGERS, PATTERSON and SMITH, JJ., concur.