SOUTHWESTERN ELECTRIC POWER
COMPANY and BEAVER WATER DISTRICT
*v.* CARROLL ELECTRIC COOPERATIVE
CORPORATION

76-137                                554 S.W. 2d 308

Opinion delivered June 27, 1977
[Rehearing denied September 19, 1977.]

*Walter R. Niblock, Leonard Greenhaw,* and *Richard L. Arnold,* for appellants.

*James F. Dickson,* for appellee.

*Davis, Douglas & Penix,* for Intervenor, Springdale Water & Waste Water Commission.

*James N. McCord,* for City of Fayetteville, Amicus Curiae.

*Eugene T. Kelley,* of *Kelley, Luffman & Jennings,* for Intervenor, Rogers Water Works.

GEORGE E. CAMPBELL, Special Justice. This action arises from the providing of electric service to Beaver Water District ("Beaver") by Southwestern Electric Power Company ("SWEPCO"). Beaver is a regional water distribution dis-

trict organized under Act No. 114 of 1957 (Ark. Stats. Ann. §§ 21-1401 — 1415), as amended. Beaver has constructed water intake, treatment and pumping facilities in an area certificated for electric service by the Arkansas Public Service Commission to Carroll Electric Cooperative Corporation ("Carroll").

From August 1, 1965 to December 31, 1972, electric service to Beaver had been provided by the Southwestern Power Administration ("SPA"), a Federal agency, which is empowered to distribute surplus electric energy from Federal reservoir projects. Such activity is authorized and governed by Section 5 of the Flood Control Act of 1944, 58 Stat. 890; 16 USCA § 825s. The electric service had been provided over a line constructed by Beaver from its facility in an area certificated to Carroll to a point outside Carroll's area certificated to SWEPCO. SPA had contracted with SWEPCO to provide the electric energy which SPA billed and sold to Beaver, but Beaver was not a party to such contract.

SWEPCO and Beaver entered into a contract dated October 12, 1972, which provided that commencing January 1, 1973, electrical service would be provided to Beaver by SWEPCO which would bill Beaver directly. In September, 1972, prior to entry into the contract of October 12, 1972, Beaver requested that Carroll execute a waiver of its rights to serve Beaver.

Carroll commenced this action for a declaratory judgment on November 21, 1973, and thereafter judgment was entered in favor of Carroll determining that the contract of October 12, 1972, between Beaver and SWEPCO was void, and finding it to be in violation of Ark. Stats. Ann. § 73-240 (Supp. 1975) which provides, in part, that no utility service may be undertaken by a public utility in an area allocated to another electric cooperative or public utility.

The cities of Fayetteville, Rogers and Springdale were granted leave to intervene or appear as *amicus curiae* in this cause and have presented briefs in support of the position of SWEPCO and Beaver. The positions urged by these parties are substantially those of SWEPCO and Beaver and are addressed in this Opinion.

Beaver and SWEPCO have appealed and assert three principal arguments for reversal: (1) Beaver is authorized by its enabling legislation to own and operate electric transmission lines and may obtain electric power from SWEPCO; (2) Beaver is exempt from the authority of the Public Service Commission, and may in the exercise of its lawful powers contract with SWEPCO for electrical service without regard to Section 73-240; and (3) in any event, if Carroll had a cause of action it is barred by the statute of limitations or laches.

Beaver and SWEPCO urge the particular application of Ark. Stats. Ann. § 21-1408(3) granting to Beaver the power—

"(3) . . . ; to transport, distribute, sell, furnish and dispose of such water to any person at any place; to construct, erect, purchase, lease as lessee and in any manner acquire, own, hold, maintain, operate, sell, dispose of, lease as lessor, exchange and mortgage plants, buildings, works, machinery, supplies, equipment, apparatus, facilities, property rights, and transportation and distribution lines, facilities, equipment or systems necessary, convenient or useful."

SWEPCO and Beaver argue that the statutory powers granted to Beaver to effectuate its purposes are sufficient to enable it to construct its own electric power line from Carroll's certificated territory into SWEPCO's certificated territory at which point SWEPCO may then lawfully deliver electric service. We do not agree.

While the grant of powers under Act No. 114 of 1957 is in many respects broad and general, these powers are granted in the context of the operation of water distribution facilities and services. We do not hold that it is not permissible for a district such as Beaver to construct electric utility lines to serve its needs, but these powers must be construed within the broader regulatory framework of existing statutes if such is reasonably possible. The construction of an electric power line from one certificated territory to another is not such a "necessary, convenient or useful" act as to frustrate the intent of the General Assembly in its structure for the regulation of public utility service established by Act. No. 324

of 1935, and as subsequently amended. While there appears to be no previously decided case in Arkansas, other jurisdictions have recognized that the place and purpose of the use of electric energy is controlling, rather than the place of connection. In *Capital Electric Power Association* v. *Mississippi Power & Light Company*, 218 So. 2d 707, a college was located in the area certificated to Capital Electric Power Association. The college provided electrical lines from its facilities to a point outside the certificated area of Capital Electric and obtained service from Mississippi Power & Light Company. The Mississippi Public Service Commission issued an order directing Mississippi Power & Light Company to terminate the service. The Mississippi Supreme Court stated:

> "The explicit policy under our Act has been one of 'exclusive' service area. If Mississippi Power & Light cannot service Whittington Hall directly, certainly to do so would be a violation of the Act. Any right to serve Whittington Hall must come from rights statutorily possessed by the Company."

The Mississippi Court also quoted with approval the conclusions of the Tennessee Supreme Court in the decision of *Holston River Electric Company* v. *Hydro Electric Corporation*, 17 Tenn. App. 122, 66 S.W. 2d 217, in which a private company had constructed a line to a point outside the city limits to obtain electrical service from a company which was not authorized to provide electrical service within the municipality. While the *Holston* case may be distinguished as to the nature of the private litigation, the sound reasoning that the place of delivery of the electric current is not controlling, but rather the place and the purpose of its use must be the controlling factor is without question.

Section 11 of Act No. 114 of 1957 provides:

> "Water districts organized under this Act shall be exempt in any and all respects from the jurisdiction and control of the Public Service Commission of this State." (Ark. Stats. Ann. § 21-1411).

Beaver and SWEPCO urge that since Beaver is exempt from Public Service Commission regulation under the

foregoing provision its activities for contracting for electrical service with SWEPCO is not contrary to Section 73-240 because Section 21-1411 has impliedly repealed Section 73-240.

Section 73-240 is a statute of general nature in a scheme of public utility regulation. We do not believe it necessary in giving effect to Section 21-1411 that the repeal of Section 73-240 as to Beaver is necessarily implied. This Court has stated:

"The cardinal rule for the construction of statutes is that the legislative intent should be ascertained, which may be done by construing every part of the statute together with reference to all laws which relate to the same subject as a single system, so as to give effect to the legislative intent and to carry into effect the general purpose of the system." *Pace* v. *State Use Saline County*, 189 Ark. 1104, at 1110, 76 S.W. 2d 294.

The purpose of Act No. 114 of 1957 was to enable cooperation with Federal programs to provide a means of water distribution through publicly created non-profit bodies. A reasoned construction of Act No. 114 in relation to the existing statutory plan of public utility regulation derived from Act 324 of 1935 necessarily permits the harmonizing of both Section 73-240 and Section 21-1411. We conclude that as to the sale and delivery of water a district such as Beaver formed under the authority of Act. No. 114 of 1957 may be free of Public Service Commission jurisdiction under the clear language of Section 21-1411. However, to extend the authority of Section 21-1411 further, and to permit Beaver to engage in any other public utility function or contract with public utilities totally free of the limitation of Section 73-240, cannot follow.

It is asserted, finally, that notwithstanding the possible application of one or more statutory restrictions, Carroll should have commenced its action within five years from the arrangement between SPA and SWEPCO, or is otherwise barred from this proceeding under the doctrine of laches. The record reflects knowledge by Carroll's former manager that

Beaver was obtaining electric service from SPA. Testimony was also developed that at some unspecified time Carroll through its former manager informally registered a verbal protest with an SPA official. No administrative or judicial proceedings were commenced by Carroll prior to the suit here on appeal.

Carroll urges that prior to October 12, 1972, it had no cause of action because SPA, an agency of the United States, was contracting to provide electrical service to Beaver and any effort to challenge this procedure would have been unsuccessful. We agree.

Had Carroll commenced an action against SPA or SWEPCO the Federal decisions are clear that Carroll could have obtained no relief. The authority of the SPA to make sales of electric power and contract with private companies for its distribution has been judicially considered and it has been determined that private parties (including particularly competing public utilities) have no standing to sue. *Kansas City Power & Light Company* v. *McKay*, 225 F. 2d 924, *Cert. Denied*, 76 S. Ct. 137, 350 U.S. 884. In certain instances Federal statutes concerning electrical production programs do require consideration of competitive matters, but this is not true of Section 5 of the Flood Control Act of 1944. See, *e.g.*, *Hardin* v. *Kentucky Utilities Co.*, 390 U.S. 1, 88 S. Ct. 651, construing Tennessee Valley Authority legislation.

We are of the opinion that Carroll's right of action did not arise until SWEPCO entered into a contract directly with Beaver in violation of the provisions of Section 73-240, and that Carroll thereafter initiated its suit within the proper time.

Other arguments of the appellants have addressed the question of the probability of increased cost of service to Beaver from Carroll since SWEPCO would provide service at a lower cost. This may be the result of this litigation, but that matter is not properly before the Court for consideration.

The judgment of the Chancery Court of Benton County is affirmed, the stay order previously entered is dissolved, and

this case is remanded for such additional relief as may be required to effectuate the judgment of the lower Court.

FOGLEMAN, J., not participating.