GREAT LAKES CARBON CORPORATION *v.*
ARKANSAS PUBLIC SERVICE COMMISSION, et al.

CA 89-272 788 S.W.2d 243

Court of Appeals of Arkansas
En Banc
Opinion delivered April 18, 1990

*Ivester, Skinner & Camp, P.A.*, by: *Hermann Ivester* and *Valerie F. Boyce*, for appellant.

*Paul R. Hightower*, for appellee Arkansas Public Service Commission.

*Turner & Mainard*, by: *James C. Mainard*, for appellee Arkansas Valley Electric Cooperative Corporation.

*Mitchell, Williams, Selig & Tucker* and *Wallace, Dover & Dixon*, by: *Kent Foster*, for appellee Arkansas Power & Light Company.

JAMES R. COOPER, Judge. This case began in December 1988 as a petition for declaratory relief filed by the appellant, Great Lakes Carbon Corporation (GLCC). GLCC sought the

right to terminate electric service provided by Arkansas Valley Electric Cooperative Corporation and to contract for that service with Oklahoma Gas and Electric Company (OG&E). This appeal comes from the Public Service Commission's denial of the petition.

The appellant, Great Lakes Carbon Corporation (GLCC), manufactures graphite electrodes in Franklin County, Arkansas, and sells them to steel producers for use in electric arc furnaces. Most of its real property is physically located in electric service territory allocated to the appellee, Arkansas Valley Electric Cooperative Corporation (AVECC) and a small part is in territory allocated to Oklahoma Gas and Electric Company (OG&E). The tract is contiguous, and the only facilities owned by GLCC which consume electricity in GLCC's manufacturing process are situated in AVECC's service area. It is undisputed that the boundaries of the appellant's land fall within property certificated to both OG&E and AVECC. It is also undisputed that the proposed point of connection with OG&E is within territory exclusively allocated to OG&E on property owned by GLCC. Further, it is not disputed that the electrical energy is proposed to be transported over a mile-long distribution system to be constructed or purchased[1] and owned and operated by GLCC across land owned by GLCC into the service territory exclusively allocated to AVECC and will be consumed in the manufacture of graphite electrodes at GLCC's plant within the boundaries of AVECC's service area. The appellant currently consumes a substantial quantity of electric energy purchased at retail from AVECC under a contract which expires in 1991. Presently, AVECC purchases power from OG&E at wholesale and transmits it across this distribution line to a transformer substation, from which it sells the power to GLCC at retail. The appellant initiated this action for declaratory relief before the Public Service Commission, seeking a ruling that it has the right to terminate the service provided by AVECC and to contract for service with OG&E instead.

The appellee AVECC objected to the appellant's petition on

---

[1] If a new line is not constructed, GLCC proposes to purchase from AVECC its existing transmission line which is already connected to OG&E's main line.

the basis that, since the facilities consuming the electricity are physically located within the boundaries of its service territory, the appellant should not be permitted to transport electricity purchased from another utility to the plant. The other appellees in this case were granted intervenor status before the Commission and, along with the Commission, are before us to defend the action of the Commission.

In February 1989, the Public Service Commission staff moved for a summary dismissal of the petition, contending that, as a matter of law, the appellant had no right to contract with OG&E for electric service. The staff of the Public Service Commission was joined in its position by AVECC.

On April 5, 1989, by Order No. 6, an administrative law judge issued an order dismissing the appellant's petition for declaratory order. For purposes of ruling on the staff motion, the administrative law judge accepted the facts stated by GLCC as true, since they were not disputed. The administrative law judge dismissed the appellant's petition on a finding that, as a matter of law, the appellant was not entitled to the relief sought, citing *Southwestern Electric Power Company v. Carroll Electric Cooperative Corporation*, 261 Ark. 919, 554 S.W.2d 308 (1977) ("*SWEPCO*"), which interpreted Ark. Code Ann. Section 23-18-101 (1987) (previously codified as Ark. Stat. Ann. Section 73-240). Timely objections to the order of the administrative law judge were filed with the full Commission, which subsequently adopted, without modification, the order of the administrative law judge. Rehearing before the Commission was sought pursuant to Ark. Code Ann. Section 23-2-422 (1987), properly preserving the issues before this Court on appeal. The Commission denied rehearing, hence this appeal by GLCC.

GLCC asserts, first, that the Commission erred in dismissing its petition for declaratory order, contending that summary judgment was improper. Second, GLCC alternatively argues that, even if summary judgment were proper, the decision was contrary to the law.

■ Summary judgment is an extreme remedy and should be granted only when it is clear that there is no issue of fact to be decided. *Johnson v. Stuckey & Speer, Inc.*, 11 Ark. App. 33, 35, 665 S.W.2d 904, 906 (1984). The object of summary judgment is

not to determine any issue of fact, but to determine whether there is an issue of fact to be tried; if there is any doubt, the motion should be denied. *Rowland* v. *Gastroenterology Assoc., P.A.*, 280 Ark. 278, 280, 657 S.W.2d 536, 537 (1983). Summary judgment should be granted only when a review of the pleadings, depositions, and other filings reveals that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Township Builders, Inc.* v. *Kraus Constr. Co.*, 286 Ark. 487, 490, 696 S.W.2d 308, 309 (1985).

As noted earlier, the PSC staff moved for summary dismissal of the appellant's petition, conceding all the allegations of the petition as true and contending that GLCC was not entitled to the relief sought as a matter of law. Because there was no dispute as to any issues of fact, the administrative law judge dismissed the petition. GLCC thereafter filed objections and, in support of its objections to the order, attached affidavits of two individuals along with supporting exhibits. The Commission ruled that the evidence proffered should not be considered and adopted the administrative law judge's order as its own. On motion for rehearing, the Commission again refused to consider the two affidavits and exhibits and denied GLCC's request for a rehearing. GLCC contends that the Commission's refusal to consider the affidavits was error.

The affidavits and exhibits were proffered and are part of the record before this Court. One is from John Sutton, who is plant manager for the appellant. The other is from Dave Harrington, executive director of the Arkansas Industrial Development Commission. Essentially, Harrington supported GLCC's position, claiming that the purported cost savings GLCC could realize in its electrical energy costs would be good for the economy and promote plant expansion. Sutton's affidavit provided more details about the plant's operations, payrolls, expansion possibilities, property taxes, etc. He said he believed his company could save about $400,000.00 per year by purchasing its power from OG&E instead of AVECC and pointed that, in his opinion, AVECC is simply a middle-man, because AVECC purchases its wholesale power from OG&E and then resells it to GLCC. In his affidavit, Sutton warned of possible unemployment due to high energy costs and competition, and he claims that AVECC agreed with GLCC in October 1977 that it would relinquish its territory if

GLCC wanted to purchase its power from OG&E. The appellant seems to contend that AVECC had bound itself to give up some of its exclusive franchise territory and should be held to that agreement, although the only supporting evidence of such an agreement is a "trip report," an internal memo summarizing the results of a meeting between representatives of GLCC and AVECC.

■ We note that the affidavits were not before the Commission when it ruled on the motion to dismiss. Although the appellant objected to the dismissal motion, it did not raise by way of affidavit or other proof any issues of fact beyond that which was alleged in its Petition for Declaratory Order. Given that the Commission had no factual dispute before it, the issue to be determined was one of law governed by the provisions of Ark. Code Ann. Section 23-18-101 (1987) and *SWEPCO, supra.* Summary relief was, therefore, appropriate in light of the undisputed facts in this case.

Since summary relief was appropriate in this particular case, we now turn to the merits of the issue. Arkansas Code Annotated Section 23-18-101 (1987) provides as follows:

> Notwithstanding any provisions of law or the terms of any certificate of convenience and necessity, franchise, permit, license, or other authority granted to a public utility or electric cooperative corporation by the state or a municipality, no public utility or electric cooperative corporation shall furnish, or offer to furnish, electric service at retail and not for resale in any area allocated by the Arkansas Public Service Commission to another electric cooperative corporation or public utility.

*Southwestern Electric Power Co.* v. *Carroll Electric Cooperative Corporation, supra,* interpreted the above statute and, in light of the statute's plain language, is dispositive of this case. In that case, Beaver Water District, a regional water distribution organization, built water treatment facilities in an area certificated for electric service to Carroll Electric Cooperative Corporation by the Arkansas Public Service Commission. For seven years, Beaver purchased its electric energy for the facility from the Southwestern Power Administration (SPA), a federal agency which is authorized to distribute surplus electric energy from

federal generating facilities. To enable it to obtain delivery of the power provided by SPA, Beaver had constructed a line from its facility in the area certificated to Carroll to a connection point outside Carroll's area located in a territory certificated to appellant Southwestern Electric Power Company (SWEPCO). Apparently, this arrangement under federal law caused no problem through 1972, when SWEPCO and Beaver contracted for SWEPCO to provide electric service directly to Beaver. Beaver then requested Carroll to waive its rights to serve Beaver's facilities in Carroll's territory. Carroll thereafter commenced an action for declaratory judgment, seeking a ruling that the contract between SWEPCO and Beaver was void. Carroll prevailed, based on Ark. Stat. Ann. Section 73-240 (Supp. 1975) (now Ark. Code Ann. Section 23-18-101 (1987)), which provides, in part, that utility service may not be undertaken by a public utility in an area allocated to another electric cooperative or public utility. In affirming the trial court, the Arkansas Supreme Court approved the "place and purpose of use" doctrine in determining cases such as this. The Court stated: "[w]hile there appears to be no previously decided case in Arkansas, other jurisdictions have recognized that the place and purpose of the use of electric energy is controlling, rather than the place of connection."

Citing *Capital Electric Power Association* v. *Mississippi Power & Light Company*, 218 So.2d 707 (Miss. 1968), the Court quoted with approval from the Mississippi Supreme Court's opinion:

> "The explicit policy under our Act has been one of 'exclusive' service area. If Mississippi Power & Light cannot service Whittington Hall directly, certainly to do so would be a violation of the Act. Any right to serve Whittington Hall must come from rights statutorily possessed by the Company."

*Southwestern Electric Power Co.*, 261 Ark. at 923, quoting *Capital Electric Power Association*, 218 So.2d at 714. The Arkansas Supreme Court also observed that the Mississippi court quoted with approval the decision of the Tennessee Supreme Court in *Holston River Electric Co.* v. *Hydro Electric Corporation*, 17 Tenn. App. 122, 66 S.W.2d 217 (1933), and observed

about both the *Capital Electric* and *Holston* cases that ". . . the sound reasoning that the place of delivery of the electric current is not controlling, but rather the place and the purpose of its use must be the controlling factor is without question." *Southwestern Electric Power Co.*, 261 Ark. at 923. Therefore, Arkansas follows the "place and purpose of use" analysis in cases such as these.

The appellant, in an excellent brief, contends that the "place of connection" rule should apply in this particular fact situation. It argues that *SWEPCO* is distinguishable from the case at bar because *SWEPCO* did not deal with a customer transporting and distributing power over its own contiguous tract of property located in the service territories of two different utilities, as here. Appellant argues that, because the customer in *SWEPCO* had no physical presence in the second utility's service area, it had no corresponding right to demand service from that utility and the utility had no right or obligation to serve the customer. However, the *SWEPCO* case did deal with a customer located in one utility's territory which proposed to transport electricity from the second utility into that territory over lines traversing the property of third parties. While we appreciate the distinctions the appellant makes, we do not think these distinctions are crucial and, from a functional standpoint, are irrelevant.

We are unable to adopt the appellant's contention that a determination as to which rule[2] controls in cases such as this should be made on a case-by-case basis in consideration of the particular facts of each case. Although identical facts rarely, if ever, appear in any two cases, the Arkansas Supreme Court has decided the issue before us contrary to the appellant's position, expressly adopting the "place and purpose" rule and rejecting the "place of connection" rule, and we find the points on which the

---

[2] An excellent and comprehensive discussion of the various tests regulatory commissions and courts apply in cases such as this may be found in *Public Service Co.* v. *Public Utility Comm'n*, 765 P.2d 1015 (Colo. 1988). The "point of delivery" or "point of connection" rule is what appellants argue should apply in this case. That rule, applied most often in Pennsylvania cases [e.g., *Stockertown Light Heat and Power Co.* v. *Pennsylvania Edison Co.*, PUR 1926B 201 (Pa. PSC 1925); *Borough of Schuylkill Haven* v. *Pennsylvania Power and Light Co.*, 3 PUR NS 127 (Pa. PSC 1934)], holds that the physical location of the electric meter determines which utility provides service to the customer.

appellant seeks to distinguish *SWEPCO* to be unpersuasive. The Supreme Court's logical analysis of the issues involved is equally applicable to the undisputed facts in the case at bar.

■ Accepting all the allegations in the appellant's petition as established, and even in consideration of the aforementioned affidavits, the appellant is not entitled to the relief it seeks as a matter of law. *SWEPCO, supra.* There were no allegations that AVECC was unable or unwilling to provide reliable electrical service to the appellant's facilities, all of which are situated within the physical boundaries of AVECC's exclusive franchise territory. Since the place and purpose of the use of the electricity to be consumed by the appellant is by facilities located wholly within AVECC's territory, that undisputed fact alone, in light of Ark. Code Ann. Section 23-18-101 (1987) and *SWEPCO, supra*, requires that AVECC be afforded the opportunity to furnish electrical service to the appellant.

Affirmed.