DELTA ELECTRIC POWER ASSOCIATION *v.*
MISSISSIPPI POWER & LIGHT COMPANY, et al.

No. 42535          February 11, 1963          149 So. 2d 504

*Lott & Sanders,* Greenwood, for appellant.

*Green, Green & Chaney, Wise, Smith & Carter,* Jackson, *Fred B. Smith,* Ripley, for appellee, Mississippi Power and Light Company.

*Jacobs, Griffith & Hatcher,* Cleveland, for appellee, Mississippi Municipal Association.

*Watkins & Eager,* Jackson; *Eaton, Cottrell, Galloway & Lang,* Gulfport; Amici Curiae in support of appellees.

*Welch, Gibbes & Graves,* Laurel; *Michael D. Haas,* Bay St. Louis; *John K. Keyes,* Collins; *Leon L. Porter, Jr.,* Clarksdale; *Stone & Stone,* Coffeeville; *Waits & Waits,* Leland; *Cohn, Hobbs & Hobbs,* Brookhaven; *Everett Truly,* Natchez; *Griffin Norquist,* Yazoo City; *Ernest R. Duff,* Columbia; *O. F. & J. O. Moss,* Lucedale, Amici Curiae in support of appellant.

494

ETHRIDGE, J.

This case involves an order of the Mississippi Public Service Commission (called Commission), directing

Mississippi Power & Light Company (called Company) to cease and desist from rendering electric distribution service or street lighting service in a newly annexed area of the City of Winona, which was certificated by the Commission to Delta Electric Power Association (called Delta). The Mississippi Municipal Association was allowed to intervene. It supported the position of the Company.

The Company and Municipal Association appealed from the Commission's order to the Chancery Court, First Judicial District of Hinds County, which reversed it. That court held that Delta had no right to operate in the disputed area, and ordered Delta to cease and desist from doing so. It adjudicated that the Company's municipal franchise, upon expansion of the city limits, extended into the newly incorporated area, and thereby superseded Delta's certificate from the Commission, issued when the disputed area was outside the city limits.

■■■ ■ The facts are without any substantial dispute. The issues are principally those of construction of Section 5 of the Public Utility Act of 1956, in the light of the facts and several prior decisions. Miss. Laws 1956, Ch. 372; Miss. Code 1942, Rec., Secs. 7716-01 to 7716-38. We conclude the Commission's order was correct, reverse the decree of the Chancery Court, and reinstate and affirm the Commission's issuance of a cease and desist order.

The precise issue is whether, under the Act, the expansion of the city limits extended Company's service area into the annexed area, under its municipal franchise granted prior to the 1956 Act and before the expansion, and superseded the prior grandfather certificate to the annexed tract, granted by the Commission to Delta, which served the area before it came within the city limits. We think it did not, and that Delta's certificate was properly protected by the Commission's order.

Both Delta and Company are public utilities engaged in the transmission and distribution of electricity, and subject to the Public Utility Act of 1956. Miss. Laws 1956, Ch. 372, Sec. 1D. Delta is a Mississippi corporation organized and operating under the Electric Power Association Act of 1936. Miss. Laws 1936, Ch. 184; Miss. Laws 1938, Chs. 251-252; Miss. Code 1942, Rec., Secs. 5463-5489. It is vested with authority to operate electric services both within and without municipalities. Code Sec. 5474(8). It has the power of eminent domain. Sec. 5474(6) (14). Delta has the obligation and duty to render non-discriminatory service to all persons subscribing for it, who live in the areas served by that corporation. Capital Elec. Power Assn. v. McGuffee, 226 Miss. 227, 83 So. 2d 837 (1955). It operates in thirteen counties in the state.

Mississippi Power & Light Company, a subsidiary of Middle South Utilities, is incorporated under the laws of Florida, and qualified to do business in Mississippi. All of its property is located in this state, generally in the western one-half from the Tennessee to the Louisiana line.

Delta was incorporated in 1938. In 1940 it constructed an electric line in the vicinity of, but outside the west corporate limits, of the City of Winona. There were no other electric lines in this area, and electric service was not then available to anyone in this rural area. Delta served the only two customers in it who desired electricity at that time. After it was made available, and as a result of this and other factors, this area west of the city limits slowly developed, over a period of years, and Delta obtained other customers. It served all of these additional customers.

On February 23, 1948, the City of Winona granted a franchise to Mississippi Power & Light Company for electric service in that municipality, its streets and public places, ''as they now exist or may hereafter be laid

out or extended.'' This franchise was for a period of twenty-five years, so it expires in 1973. Since 1948 Company has been furnishing electric service in Winona under that franchise. During this same period and since 1940, Delta has been furnishing electric service to those desiring it in the disputed area which was west of the city limits prior to December 31, 1959.

In 1948 the City made a street lighting agreement with the Company, for five years, and renewable for similar additional periods unless either party elected to terminate it. That contract is still in effect.

The Public Utility Act became effective on March 29, 1956. Miss. Laws 1956, Ch. 372, Sec. 40. Before that date there was no statewide regulation by the Public Service Commission or any other state agency of the service areas, rates, or related operations of electric public utilities. Subject to certain limitations, the act vested ''exclusive original jurisdiction'' over these matters in the Commission. *Ibid.,* Sec. 4.

Section 5(b) provides for grandfather or prior service certificates of convenience and necessity. It states that the Commission shall issue such a certificate to any person engaged in the operation of electric facilities and equipment ''for the construction or operation then being conducted, without requiring proof that public convenience and necessity will be served by such construction or operation,'' if the application was made within six months after the effective date of the act. Both Delta and the Company filed applications within the six months, and thereafter negotiated over a lengthy period for the purpose of agreeing on areas which they should recommend to the Commission for certification to Delta and Company, respectively. They agreed that the disputed area involved in this suit should be certificated to Delta and that certain other areas should be certificated to Company. Hence they submitted to the Commission a letter of agreement, and map showing

the recommended areas of agreement for prior service certificates.

On November 25, 1959, all of the disputed area involved in this suit was certificated to Delta. The Company was a party to that proceeding, did not appeal from it, and the Commission's order, granting the grandfather certificate to Delta, became final. Delta has continued since that date to serve every electric customer in the area, including two street lights for the City of Winona. Delta's grandfather certificate from the Commission describes the disputed area involved in this suit by metes and bounds, and clearly covers it.

By an ordinance effective December 31, 1959, the City of Winona extended its corporate limits to the north, south, and to the west. The disputed area here involved is part of the western expansion of the city limits, annexed on that date to the municipal boundaries of Winona.

In May, 1960 the Company, without any authorization from the Commission, constructed an electric line into the disputed area, previously certificated by the Commission to Delta, extended it to the Hightower property, and in June, 1960 constructed two prongs from this line in the disputed area for the purpose of serving street lights. No electric service was actually rendered to the Hightower property. The street lights were operated for several weeks, when the bulbs were removed.

On May 31, 1960 Delta filed the present petition before the Commission, asking it to order the Company to remove its line from Delta's area and to cease and desist offering its electric service to service locations within areas certificated to Delta. The Company filed its answer and cross-petitioned. It took the position that extension of the city limits expanded its precedent franchise from the city to cover the newly annexed area.

After a lengthy hearing, the Commission's supplemental and amended order of July 18, 1961 ordered the

Company to cease and desist from offering electric service and operating facilities within the disputed area. It denied the cross-petition. The Commission found that Delta's certificate of November 25, 1959 contained a particular legal description of the area certificated to Delta, which included the disputed area; that the Company did not appeal from the order granting Delta that certificate; that since March 29, 1956 Delta has been rendering reasonably adequate electric service within the disputed area; and the Company's certificate did not include any part of that area certificated to Delta. The Commission stated it did not consider the municipal franchise granted to the Company by Winona to be germane to the issues, and did not pass upon the validity of that franchise. It ruled solely on the respective rights of the parties arising out of their certificates of convenience and necessity.

## I.

Prior decisions interpreting the Public Utility Act have established two propositions: (1) Awards by the Commission of grandfather certificates under Section 5 are made on an area rather than a facility basis; (2) A certificate of convenience and necessity issued by the Commission is a valuable right which is entitled to protection by the courts.

An electric power association is under an obligation to render electric service upon a nondiscriminatory basis to its members and to other persons living in the area. Capital Electric Power Assn. v. McGuffee, 226 Miss. 227, 243, 83 So. 2d 837, 84 So. 2d 793 (1956). A nonexclusive franchise is a valuable right which can be protected in the courts. Miss. Power & Light Co. v. Miss. Power District, 230 Miss. 594, 611, 93 So. 2d 446 (1957); Payne v. Jackson City Lines, Inc., 220 Miss. 180, 70 So. 2d 520 (1954).

In Miss. Power & Light Co. v. Town of Coldwater, 234 Miss. 615, 635, 106 So. 2d 375 (1958), it was held that a revenue bond issue, to provide funds for acquisition of electric distribution facilities in a municipality, was void because of defective notice. Whether an electric power association should be permitted to "invade an area" already having electric utility service furnished by the company was first for determination by the Commission. The opinion discussed briefly Section 5 of the Act, recognized the right under Section 5(b) to a grandfather certificate, and observed that under the second paragraph of Section 5(d) provision is made for more than one utility operating within a municipality. 234 Miss. at 634.

United Gas Corp. v. City of Philadelphia, 238 Miss. 409, 118 So. 2d 618 (1960), is significant. Miss. Code 1942, Sec. 3433, authorized a city to fix utility rates subject to review by the chancery court. Thereafter the Public Utility Act repealed Section 3433, and vested in the Commission the right to determine such rates. In 1946 the city granted United a franchise for 25 years. United proposed to increase its gas rates, and the city obtained an injunction prohibiting it from doing so. Reversing that decree, this Court held that jurisdiction to fix rates was vested by the 1956 Act in the Commission. The city's remedy was said to be before the Commission, and no longer the chancery court. The legislature "reserved the right to pass such laws as may be expedient or necessary in municipal affairs." The 1956 Act superseded pro tanto the precedent franchise to United. The legislature, acting under its police power, had the right to vest in the Commission power to determine rates.

Capital Electric Power Assn. v. Miss. Power & Light Co., 240 Miss. 139, 125 So. 2d 739 (1961) (called the Elton case), spelled out in some detail the rights of a holder of a certificate of public convenience and neces-

sity from the Commission. The Elton Company operated a wood-chipping plant three miles south of the City of Jackson. Capital Electric had been serving the area for 17 years, and obtained from the Commission a grandfather certificate under the 1956 Act, which covered the area involved. Nevertheless, Miss. Power & Light Company applied for a certificate to construct lines to Elton, pursuant to its contract with it. The Commission's issuance of a certificate to Mississippi Power was affirmed by the circuit court, but on appeal that judgment was reversed.

Section 5 of the Act was discussed in some detail. Capital Electric was ''obligated to render non-discriminatory service to persons living in the area served by it and on the routes traversed by its distribution lines, if they subscribe therefor.'' Hence it was said that, having served the electric requirements in this area for 17 years, Capital Electric under Section 5(b) acquired the right to a certificate, ''being in truth and in fact a franchise from the State. Such right is indeed a valuable one,'' although nonexclusive. By the Act ''it was the intention of the legislature that facilities of one utility should not be duplicated in the same area;'' that there should not be ''duplicating and overriding facilities and certificates.'' Hence it was said, ''An existing utility within the certificated area has the right and duty to provide and service, and must be given that opportunity. If it fails, the commission can award another franchise to another utility. Section 5(c) and (f) makes this clear.''

For emphasis, it was stated: ''There should no longer be any doubt as to the rule in this State on that proposition.'' The Commission could not disregard the requirements of a grandfather certificate under Section 5(b). In summary, the opinion held: ''To allow the invasion of Capital Electric's area on account of the desire of Elton Company, regardless of their reasons

therefor, to be served by Mississippi ·Power & Light Company would lay down a principle which would result in endless duplication and make a shamble of the utility act. Such a policy cannot be countenanced by this Court.''

Miss. Power Co. v. East Miss. Elec. Power Assn., 140 So. 2d 286 (Miss. 1962), involved principally an area within one mile around and adjacent to the City of Louisville. Louisville's Electric System contended that, under Sec. 1H of the Act, it had the sole right and privilege of operating within the one mile corridor. That provision stated that any public utility owned by a municipality should not be subject to the provisions of the Act, except as to extensions of utilities greater than one mile outside of corporate boundaries after the effective date. This provision was not a grant, but an exemption from regulation, limited in terms.

East Mississippi had been serving the outside area prior to and on the Act's effective date. It was held the legislature did not intend by this exemption ''to take from a company that was operating within said corridor on the date of the Act its right to operate therein,'' and the Commission was justified in certificating the area to East Mississippi. Whether its certificate could be invaded depended upon whether the Commission found it rendered inadequate service, and failed to remedy it. The award of a certificate, it was held, is made on an area rather than a facility basis. *Capital Electric* so held. Moreover, East Mississippi was a public utility in statutory contemplation. Cf., Miss. Public Service Commission v. Holloway Transfer & Storage Co., 247 Miss. 184, 148 So. 2d 689. (Motor Vehicle Act).

In short, prior decisions under the Public Utility Act of 1956 hold that certificates to public utilities are based on an area basis, are valuable rights, although nonexclusive, entitled to protection of the courts, and

the Commission (under Section 4) has "exclusive original jurisdiction over the intrastate business and property of public utilities." Cf., Miss. Code 1942, Rec., Secs. 5490-5497 (1938 pre-emption statutes for power assns.)

## II.

Prior to the Public Utility Act of 1956, Delta for many years had been serving customers in the disputed area, when it was not within the municipal limits. Before the 1959 expansion of Winona's boundaries, Delta obtained its certificate from the Commission to serve that area. The Company's certificate did not include it. We do not think the Act is susceptible of a construction which would permit subsequent expansion of the city limits to extend the Company's service rights into the disputed territory. If it should, this would permit Company's franchise from the city, executed long before the annexation, when coupled with the expansion order, to supersede the prior grandfather certificate granted by the Commission to Delta for the disputed area. This is not consistent with the terms of the Act or with the legislative purposes.

The title of Ch. 372, Laws of 1956, states it is an act to "vest authority" in the Commission "to regulate certain public utilities." The preamble reveals legislative concern with utility services "both within and outside of municipalities," and the purpose to vest controlling power in the Commission "to regulate such utilities' rates and services." Section 4 gives it "exclusive original jurisdiction," with certain exceptions. There is no indication that a municipal expansion of boundaries would supersede a prior certificate from the Commission.

Subsection (d) of Section 5 is aimed at the precise issue involved here: "Where there shall be two (2) or more persons holding certificates of convenience and

necessity for similar operation in the same municipality, such operation may be carried on by such persons within their respective certificated areas and such persons shall be exempt from further application to the commission for extension of or additions to their facilities within their respective certificated areas of said municipality, including any extensions of the corporate limits thereof.

"When more than one utility, including co-operatives, operate within a municipality all such utilities, including co-operatives, shall be subject to rate regulation therein. . . ."

Subsection (d) recognizes that two public utilities, such as Delta and Company, may hold certificates for similar operations in the same municipality. It authorizes operations to be carried on by them "within their respective certificated areas," and exempts them from further application for extension of their facilities within their "respective certificated areas of said municipality, including any extensions of the corporate limits." In other words, if such utilities extend or add to their facilities within their respective certificated areas of the city, which would include extensions of corporate limits of the city, they are exempt from further application to the Commission for such extensions or additions. This assumes the annexed areas are within the respective certificated areas of the two utilities.

The second paragraph of subsection (d) recognizes that both "co-operatives" and other utilities may operate within a municipality at the same time, and in such event they are subject to rate regulation. In short, subsection (d) specifically applies to and recognizes the existence of a situation such as that here presented, where Delta and the Company have respective certificated areas in the municipality, under the extension of the city limits. Section 5(d) applies to certificate holders for areas subsequently annexed to municipalities.

This is evidenced from the phrase, "including any extensions of the corporate limits thereof."

██ █ Subsections (b), (c), and (d), of Section 5, must be read together. Subsection (b), mandatory in nature, requires the Commission to issue a grandfather certificate where a person, as defined, is engaged in the operation of facilities on the effective date of the Act, March 29, 1956. Subsection (c) provides that "in all other cases" the Commission shall have a hearing on certificate applications, "provided, however, no certificate shall be required for extensions or additions within the corporate limits of a municipality *being served by the holder of a certificate of convenience and necessity, . . .*" (emphasis supplied) Hence if there is only one holder of a certificate within a municipality, then it can construct extensions anywhere in the corporate limits without further application to the Commission. However, under subsection (d), where there are two holders of certificates in the same municipality, then each holder is only exempt from further application to the Commission for extensions *within its own certificated area* of the municipality.

The quoted part of subsection (c), upon which Company relies, must be considered along with subsection (d). When read together, the foregoing interpretation renders both subsections consistent with one another, the terms of the statute, and a reasonable exercise of legislative discretion. Accordingly, under subsection (d), when there were two persons holding valid certificates for electric operations in separate areas in Winona, as extended, these certificate holders had the right to carry on their operations in their respective certificated areas within the municipality, without making further application to the Commission for extensions and additions of their facilities, within their respective certificated areas.

The reference in subsection (d) to ''respective certificated areas'' reflects a legislative intent to exempt the holder of a certificate, and not the holder of a municipal franchise. Throughout Section 5, the statute uses the words ''certificate'' and ''franchise'' correctly and distinctly. If the legislature had intended to exempt the holder of a municipal franchise, then it would have used the term ''municipal franchise'' instead of the word ''certificate.'' When it referred to extensions ''within their respective certificated areas,'' it intended areas which had been certificated by the Commission, not areas for which a municipal franchise only had been issued. If it had intended the latter, it would have said so.

Furthermore, subsection (b) made it mandatory for the Commission to issue a certificate to Delta for the areas it was serving outside the then corporate limits of Winona. The legislature knew that corporate limits sometimes expand. If it had intended the Commission should not issue certificates for areas near corporate limits, in view of possible future expansions, then presumably it would have so stated, and not used the mandatory language of subsection (b).

The phrase ''municipal franchises'' is used numerous times in Section 5. Yet it does not provide that when a certificated area is taken within a municipality, the Commission's certificate would be cancelled. The clear inference is that the legislature did not intend that result. Moreover, there is no provision that, after a certificate has been issued by the Commission, it shall be necessary, after corporate limits are extended, for a municipal franchise also to be obtained.

Nor is there any direction that a municipal expansion shall cancel or in any way affect a Commission certificate. The exclusive method for cancellation of such a certificate is prescribed in subsection (f), Section 5, where a utility is not rendering reasonably

adequate service, and fails to do so after ordered to correct it. Yet Company's argument would add an additional ground for cancellation of a Commission certificate, namely, where a municipality has extended its corporate limits into a previously certificated area. The statutory expression of one method for cancellation of certificates is justly to be construed as an exclusion of other methods. 50 Am. Jur., Statutes, Secs. 244-46; Tepper Bros. v. Buttross, 178 Miss. 659, 664, 174 So. 556 (1937).

The next to last sentence of subsection (e) contemplates power associations operating within a city and paying for that privilege. It says that any co-operative operating "within *any area of* a municipality" shall pay it two percent of gross revenue from inside sales. Furthermore, the first sentence of Section 5 provides that no person shall construct, acquire or operate equipment for distribution of electricity "without first having obtained from the Commission a certificate." There is no exception which would authorize a municipality, by issuing a franchise, to excuse this requirement of a certificate.

Subsection (e) recognizes that a public utility, which holds "a certificate of convenience and necessity granted under the provisions of this act covering the geographical area of such municipality," may after the expiration of a "municipal franchise" continue to use the streets upon condition of payment of compensation therefor at the rate of two percent of sales to customers within the city. Nevertheless, the utility must have a certificate from the Commission.

Subsection (g) of Section 5, upon which Company particularly relies, has a restricted application. It constitutes a limitation on the Commission, as of the time of issuing a certificate, for an area which at that time is in a municipality. It prohibits the Commission from issuing to a utility a certificate for an area *then* in a

municipality, unless the utility has a franchise from the municipality. It presupposes the pending application is for a certificate. Here Delta is not seeking a certificate for any service territory. It already has a valid certificate covering the disputed tract, granted to it by the Commission before the expansion of the city limits, and at a time when no part of the area was within the corporate limits.

Subsection (g) also presupposes that an applicant for a certificate within a municipality has a municipal franchise, which it must attach to its application. Moreover, it does not require that any further application be filed after a certificate is once granted by the Commission. This construction is further supported by the third sentence of subsection (g). It states that if a municipality arbitrarily refuses to grant a franchise to a utility ''now operating within said municipality,'' then the utility can obtain a Commission certificate for a municipal area without having a franchise. See Miss. Valley Gas Co. v. City of Jackson, 236 Miss. 81, 109 So. 2d 637 (1959). The phrase ''now operating'' refers to the effective date of the Act, March 29, 1956. No similar relief was provided for a utility holding a certificate for an area outside of a municipality, which is taken into it after that date, and the franchise arbitrarily is denied. This omission warrants the conclusion the legislature intended that, when a certificate was once validly granted, (as it was to Delta), it would remain valid even though the area was subsequently annexed by a municipality; and that such annexation would not make it necessary for the utility to apply again for the area already certificated to it. If that were not so, the legislature as a matter of equality would have afforded presumably the same relief from arbitrariness to a utility whose certificated area was brought into a city by a municipal expansion.

## III.

In the drafting of Section 5 of the Act, the legislature was aware manifestly of municipal franchises, Commission certificates, and extensions of corporate limits. It mentioned all of them in the Act. If it had intended that extension of municipal limits would cancel, modify, or affect in any way a certificate of convenience and necessity from the Commission, it no doubt would have provided for such cancellation. There is no such directive. To read into the Act a requirement that any extension of municipal limits would cancel *pro tanto* a certificate from the Commission would be unwarranted.

Moreover, it would impute to the legislature an intent inconsistent with its purpose to avoid duplicating facilities. The dominant policy which the legislature had in view must be considered. See Zeigler v. Zeigler, 174 Miss. 302, 310, 164 So. 768 (1935); Sheffield v. Reece, 201 Miss. 133, 143, 28 So. 2d 745 (1947); Gambrill v. Gulf States Creosoting Co., 216 Miss. 505, 510-511, 62 So. 2d 772 (1953). This maintains the *status quo* in the disputed area.

Subsection (d) authorizes two electric utilities to serve separate certificated areas in the same municipality. This would result in no duplication or inconvenience, the legislature apparently concluded, although the contrary might well be the case where two transit companies are serving in one city. At any rate, subsection (d) of Section 5 makes it clear that two utilities may hold certificates from the Commission for separate areas in the same municipality. The legislative history in the Senate, as reflected in the Journal, is too sketchy and indefinite to be of assistance in the Act's interpretation on the present issues. Miss. Senate Journal, 1956, pp. 327, 329, 353-359, 391, 405-408, 510, 540-542, 575. Moreover the statute as finally enacted is the controlling guide.

■■ ■ A municipality in Mississippi is a creature of the State. It has only such power and authority as may be granted to it by statute. Adams v. Kuykendall, 83 Miss. 571, 590, 35 So. 830 (1903). ■■ ■ The powers given municipalities to grant utility franchises and the right to use their streets and public places are subject to legislative control. Miss. Code 1942, Rec., Secs. 3374-73, 3374-85, 3374-119, 3374-120, 3374-129. The same applies to the power to extend municipal boundaries. Code Secs. 3374-10 to 3374-16. Code Sec. 2780 gives power associations the privilege to construct their lines over public roads and lands, subject to regulation.

■■ ■ All of these statutes must be read together, and in the light of the subsequently enacted Public Utility Act of 1956. ■■ ■ To the extent that the latter statute is inconsistent with any of the former's provisions, the Act modifies them. All were enacted under the police power of the state. Superior Oil Co. v. Foote, 214 Miss. 857, 59 So. 2d 85 (1952). We do not consider or decide any issues unnecessary for the decision of this case. We hold that expansion of the city limits of Winona into the disputed area, coupled with the franchise and street lighting contract from Winona to Company, did not supersede Delta's certificate from the Commission to serve the disputed area. That certificate was issued before the area was within the municipal limits. The city at that time did not have any jurisdiction or power over this territory. Its franchise and street lighting contract, at the time of their execution, could not preclude the legislature from exercising its plenary police power over areas then outside of municipalities, nor its power to control and regulate municipal activities.

■■ ■ Municipal ordinances are necessarily local in their application. They apply only to the territory of the municipality by which they were enacted. They have no extraterritorial application, except when the sovereign

gives them that effect. Anno., 13 Am. & Eng. Ann. Cas. 136 (1909).

██ ██ A municipality's power over its streets is derived from the state, which has plenary control over them, including the right to grant the use of streets to others. So. Bell Tel. & Tel. Co. v. Meridian, 241 Miss. 678, 131 So. 2d 666 (1961). ██ ██ Code Sec. 2780 granted that right to Delta in the disputed area long before the annexation. After that event, the governing body of a municipality has the right to regulate reasonably the manner in which Delta's lines and appliances are constructed and maintained, subject to the original, primary jurisdiction of the Commission over all services and facilities of public utilities under the 1956 Act.

## IV.

██ ██ Appellees contend that to deny extension of the corporate franchise and street lighting contract to the disputed area would violate the impairment of contracts and due process clauses of both the State and Federal Constitutions. Miss. Const. 1890, Secs. 14, 16; U. S. Const., Art. I, Sec. 10, par. 1; 14th Amend. We find no merit in this position. It is based on the assumption that the franchise and street lighting contract, which were granted Company by Winona when the disputed area was not within the corporate limits, vested in Company rights in that area, which was then outside of municipal limits. When they were executed by the city, no statute of this state authorized Winona to grant a franchise or street lighting contract to the disputed area, then outside the city. Winona's power was confined to its corporate limits. The city had no extraterritorial power of any kind to grant Company any rights in the disputed area when the contracts were executed.

On the effective date of the Public Utility Act, and before the disputed area came within municipal limits, the legislature by that Act vested in Delta a right to

receive for it a grandfather certificate. This was a valid exercise of the police power of the state. The municipal franchise and street lighting contract were not pre-existing rights as to the area involved in this suit, because before they could attach, if at all, the certificate issued to Delta by the Commission under the Act attached to the disputed area. There is no constitutional objection to this interpretation. On the contrary, to deprive Delta of the disputed area as a service territory would not only be contrary to the mandatory terms of the statute, but would also be violative of the certificate granted to it by the Commission. See Miss. Laws 1956, Ch. 372, Sec. 26(d) (scope of review).

■■ ■ There was no error in the Commission's overruling Company's plea to its jurisdiction, and the motion to dismiss Delta's petition. Appellant did not seek any relief against the City of Winona. It only sought an order directing Company to remove its lines in the disputed area, relying upon its certificate from the Commission. Hence the city was not a necessary party to the suit. Moreover, at Company's instance, the Commission struck from Delta's pleadings allegations attacking validity of the franchise, and properly ruled that it had no power to pass upon that issue.

Stegall v. City of Jackson, 141 So. 2d 236, 143 So. 2d 298 (Miss. 1962), does not affect this case. It held only that land developers who, without authority, laid sewer lines in streets and county roads, without any recorded reservation, dedicated that system to the public use, and could not recover its value from the city which annexed the area. However, Stegall (141 So. 2d at 241) referred to Gwin v. City of Greenwood, 150 Miss. 656, 115 So. 890, 58 A.L.R. 849 (1928), which has some relevancy here. There the owner of a subdivision outside of the city limits dedicated the streets, but reserved the exclusive right to operate water and sewer lines thereon.

Later the city extended its boundaries to include this area. It was held the municipality had no right to enjoin Gwin from interfering with its extension of water mains. The reservation in the dedication reserved in the dedicator a private right of property, when the reservation was made before the area was brought into the city limits.

Appellees argue as analogous precedents from other states several cases in which municipalities have extended their boundaries, affecting previously acquired utility rights in the annexed area. Farmers Electric Co-op. Corp. v. Ark. Power & Light Co., 220 Ark. 652, 249 S.W. 2d 837 (1952), but changed by Ark. Laws 1955, Act No. 85, and Ark. Laws 1957, Act No. 103; Wichita Falls v. Bowen, 143 Tex. 45, 182 S.W. 2d 695 (1944); Omaha Transit Co. v. Briggs, 167 Neb. 703, 94 N.W. 2d 461, 28 PUR 3d 26 (1959); Whitaker v. Louisville Transit Co., 274 S.W. 2d 391 (Ky. 1954); Rosehill Cemetery Co. v. Chicago, 352 Ill. 11, 185 N.E. 170 (1933); Deneen v. Houghton Co. St.-Ry. Co., 150 Mich. 235, 113 N.W. 1126, 13 Am. & Eng. Ann. Cas. 134 (1907); Public Service Co. v. Public Utility Comm. of Colo., 142 Colo. 135, 350 P. 2d 543 (1960); Clarks-Washington Elec. Membership Corp. v. Ala. Power Co., 272 Ala. 598, 133 So. 2d 488 (1961). These cases are not persuasive here. They are based essentially upon the particular statutes and constitutional provisions of the specific states. They involve issues and statutes different from those arising under the Public Utility Act of 1956.

In summary, on the direct appeal by Delta, the judgment of the chancery court, which reversed and set aside the order of the Public Service Commission, is reversed. The order of the Commission is reinstated and affirmed. Appellees' cross appeal on the jurisdictional issue is without merit. Hence on the cross appeal the case is affirmed.

On direct appeal, reversed and order of Public Service Commission reinstated and affirmed; on cross appeal, affirmed.

All Justices concur.