222 So.2d 399 (1969)
MISSISSIPPI POWER & LIGHT COMPANY, a Mississippi Corporation
v.
CAPITAL ELECTRIC POWER ASSOCIATION.
No. 45102.
Supreme Court of Mississippi.
April 21, 1969.
*400 Green, Green & Cheney, Wise, Carter & Child, Jackson, Fred B. Smith, Ripley, for appellant.
Hedgepeth & Hedgepeth, Jackson, for appellee.
SMITH, Justice.
Mississippi Power & Light Company appeals from a decree of the Chancery Court of the First Judicial District of Hinds County affirming a "cease and desist" order entered against it by Mississippi Public Service Commission upon petition of appellee, Capital Electric Power Association.
Capital Electric's petition, filed October 4, 1960, charged Mississippi Power with having invaded its service area, previously certificated to Capital Electric by the Commission on September 21, 1959, under the provisions of Chapter 372, Mississippi Laws of 1956, by constructing, maintaining and operating electric lines and other facilities in the area and by serving and offering to serve customers therein.
The area in question lay west of the City of Jackson and became a part of that city on March 17, 1960, through extension of its municipal boundaries.
On October 27, 1960, Mississippi Power answered and filed a cross petition claiming the right to serve the area, the City of Jackson was permitted to intervene on February 7, 1961, and afterward various pleadings, motions and exhibits were filed by the several parties.
In substance, the position of Mississippi Power, as reflected by its pleadings, was that, while the area, prior to its annexation, had been certificated to Capital Electric with its consent, in consenting it had expressly reserved the right to serve this or any other territory which might afterward become annexed to the City of Jackson, wherein Mississippi Power held a franchise.
As stated, the boundaries of the City of Jackson were extended on March 17, 1960, so as to include the area in question and Mississippi Power claimed that its franchise was thereby extended to include it; and, moreover, asserted that it was entitled to "follow the customer" (the City of Jackson) into the added area.
By way of affirmative defenses, Mississippi Power pleaded, inter alia, its municipal franchise granted on May 26, 1956, and averred that Capital Electric had no municipal franchise. Mississippi Power also asserted a "grandfather" right to the added territory by virtue of its service within the City of Jackson as it existed on the effective date of the 1956 Act and prior to the expansion of the municipal boundaries on March 17, 1960.
*401 By cross petition Mississippi Power demanded that Capital Electric be required to discontinue serving the area certificated to it but which now lay within the expanded municipal boundaries of the City of Jackson. There followed several hearings, mostly involving questions relating to pleadings, and a period of relative quiescence.
At the time there were pending on appeal to this Court two cases presenting substantially analogous factual situations. Those two cases have since been decided and are sometimes referred to as the "Winona" case and the "Clinton" case in reference to the municipalities where they arose.
On February 11, 1963, this Court decided "Winona," reported as Delta Electric Power Ass'n v. Mississippi Power & Light Co., 250 Miss. 482, 149 So.2d 504 (1963) and on March 11, 1963, decided "Clinton," reported as Capital Electric Power Ass'n v. Mississippi Power & Light Co., 250 Miss. 514, 150 So.2d 534 (1963).
In both Winona and Clinton Mississippi Power held municipal franchises and contended that, when the municipal boundaries were extended, their service area was likewise extended, even though such an extension encroached upon an area previously certificated to another utility. In both cases this contention was rejected by the Court.
Here, as in Winona and Clinton, Mississippi Power held a franchise to serve an area comprising a municipality, and as in Winona and Clinton there was an extension of the municipal boundaries so as to include within the municipality territory previously certificated to a power association. As in Winona and Clinton, Mississippi Power claims the right to serve that territory by reason of its incorporation into the municipality. Since the opinions in Winona and Clinton contain clear statements of the issues and of the Court's reasons for rejecting Mississippi Power's assertion of the right to serve the added territory, we will not repeat here what was said in those cases.
After the decisions in the Winona and Clinton cases were announced the Commission, considering that such decisions were controlling as to the issues, on motion, struck the answers of Mississippi Power and of the City of Jackson. Thereafter, however, with leave of the Commission, Mississippi Power filed an amended answer in which it brought forward its original contentions and also pled that it had succeeded to the rights of Jackson Gas Light Company, under a corporate charter granted it by the Mississippi Legislature in 1860 and amended in 1888, as well as to those of Light, Heat and Water Company under a charter granted it in 1888. It pled certain rights granted it by the Board of Supervisors of Hinds County permitting use of highway and road rights-of-way for construction of power lines. Also pleaded were other matters which we consider it unnecessary to detail here. The City of Jackson filed no further answer and appears to have abandoned the case.
Mississippi Power's argument that its municipal franchises expand coextensively with municipal boundaries into areas previously certificated to another utility was rejected in both the Winona and Clinton cases.
Upon conclusion of the hearing, the Commission found, therefore, that the decisions in Winona and Clinton controlled and issued its cease and desist order against Mississippi Power as prayed by Capital Electric. Mississippi Power appealed to the Chancery Court of the First Judicial District of Hinds County where the Commission's order was affirmed.
Mississippi Power contends that this was error, that Winona and Clinton are not controlling, and that rights possessed as successor to Jackson Gas Light Company and Light, Heat and Water Company under the 1860 and 1888 charters distinguish this case.
*402 In its brief filed with this Court, Mississippi Power now states that its "principal contention is that it holds nonexclusive, valid electric franchises covering the disputed area; and that these grants from the State are enforceable and constitutionally protected."
This contention is based upon an assertion that Mississippi Power is the lawful successor to Jackson Gas Light Company and Light, Heat and Water Company, and is the owner of their respective franchises. This claim is supported by a deraignment of title attached to the brief. The validity of Mississippi Power's title is challenged by Capital Electric but for the purposes of this opinion it will be assumed that it is good.
The charter of Jackson Gas Light Company was granted by the Mississippi Legislature by Chapter CCXLIII, February 10, 1860. This act incorporated an existing gasworks located in the City of Jackson. Chapter 427, Mississippi Laws of 1888, amended the charter previously granted so as to authorize electric service as follows:
SECTION 1. Be it enacted by the Legislature of the State of Mississippi, That the charter of the Jackson Gas Light Company be and the same is hereby amended as follows: The said Jackson Gas Light Company is fully authorized to construct, own and operate an electric light and power plant in the city of Jackson, in connection with the present gas plant; and it is fully authorized and empowered to erect poles along and through the streets and alleys of said city on which to suspend its wires, lamps and other appurtenances; provided, that nothing herein contained shall be construed as legalizing said company's occupation of a part of Market Square, if the same has not already been legalized.
Light, Heat and Water Company was incorporated under Chapter 424, Laws of Mississippi 1888, Section 3, of which is as follows:
SEC. 3. Be it further enacted, That said company shall have power to own such lands and all such factories, reservoirs and mechanical devices or appliances as may be deemed proper by the directors of said company to conduct successfully said business and operate the franchises hereby conferred, and to locate them at points most advantageous to its business, and to manufacture and produce any and all kinds of artificial light and heat, whether made from fuel or power, electricity or otherwise; and to store and supply for public and private use water; and to sell such light, heat and water on such reasonable terms as said directors may from time to time establish, in the city of Jackson and its suburbs; and to own, use and operate all machinery, engines, conduits, wires, pipes and all appliances necessary or proper to the business of said company. That the right-of-way over all the streets and alleys of the city of Jackson and the public roads adjacent thereto is hereby granted said company for its pipes, wires, poles and appliances for the purposes aforesaid, and authority and right is hereby conferred on said company or its agents to dig the same, to lay their pipes beneath said streets and roads and to repair same, and to erect poles upon which to suspend their wires or lights, but such pipes and poles and wires must be so arranged that the use of said streets and roads as public highways shall not be materially impaired; that said company may buy, sell and deal in for profit, all the appliances to its said business and also do gas-fitting and plumbing for hire. (Emphasis added.)
There is little, if any, dispute as to the facts. In 1888 the disputed area lay west of the City of Jackson and was two miles from it at the nearest point. In 1921 this area was one mile distant at its nearest point. In 1925 the boundary of the City of Jackson had approached to within one-half mile. In 1949 the City expanded its boundaries *403 so as to touch the area on the east side but did not include any part of it.
In 1915 the area was woodland and farmland. There was one residence either on or near the disputed area. There was one farm on it which later became a dairy farm. A part of the disputed area could be reached from Jackson in 1915 and for years afterward only by a dirt or "dry weather" road. In the 1920's and later, this road was almost always impassable in winter. There was a swampy area and a creek which could hardly be crossed in the winter with a horse and buggy. Between this area and the City of Jackson was wooded, open country with a few little shanties. These conditions continued without significant change until U.S. Highway 80 was opened between 1938 and 1940. At that time some development began but the area was still one-half mile distant at its closest point from the City of Jackson.
In its brief, Mississippi Power concedes that Capital Electric has furnished the electric service in the disputed area since September, 1939, which was the earliest time that such service was furnished by anyone. Also, it is conceded that Capital Electric had 134 connected services prior to March 29, 1956; 73 additional connections between March 29, 1956, and the city expansion on March 17, 1960; and 34 connected from that date to July 28, 1964. It is also conceded by Mississippi Power that its own services in the disputed area were limited to 6 connections prior to March 29, 1956; none connected from that date to March 17, 1960; and, 19 connected from March 17, 1960 to July 28, 1964.
Mississippi Power contends, however, that the charters, granted by the Legislature in 1860 and 1888, to its predecessors, give it the right to serve the added territory. They assert that these charters constitute binding, irrevocable, contractual obligations of the State of Mississippi granting it the right to do so, and are within the protection of the nonimpairment of the obligation of contracts clause of the constitution, citing Southern Bell Telephone & Telegraph Company v. City of Meridian, 241 Miss. 678, 131 So.2d 666 (1961).
Southern Bell, supra, involved Chapter 38, Laws of Mississippi of 1886. In a preamble, the Legislature declared the purpose of the act: "AN ACT to encourage and facilitate the construction of Telegraph, Telephone and other like lines in the State of Mississippi." The act was designed to induce telegraph and telephone companies to come into the State and extended an invitation to them to build lines along all public roads, streets and waters of the State, free of charge. At the time, the telegraph had come into general use, but the telephone had not been invented until 1876, and was a relatively new device. Southern Bell's predecessor had accepted the offer extended by the act and had built lines in the City of Meridian and elsewhere. In Southern Bell, supra, the Court held that the act contained a clear offer or invitation expressly predicated upon the proposition that companies accepting it might use the public ways free of charge, and that Southern Bell had accepted it. As a consequence, the Court said that Chapter 372, Mississippi Laws of 1956, Section 5(e), insofar as it required payment of rent for use of the streets, violated the nonimpairment clause of the Constitution because the offer and acceptance constituted a contract. We do not think that the charters of incorporation embody an offer such as that extended by the statute in Southern Bell, nor that there was a contract such as that found by the Court to exist in that case.
In this case, the 1860 and 1888 Acts were for the single purpose of granting charters of incorporation and enumerating the powers of the corporations so chartered, by a method then in common use for that purpose. Moreover, while corporate charters possess contractual characteristics, they are to be strictly construed against the corporation.
Mississippi-Gulfport Compress & Warehouses, Inc. v. Public Service Commission, *404 189 Miss. 166, 177, 196 So. 793, 795 (1940) held:
In the case of Williamson v. Gordon Heights Ry. Co., 8 Del. Ch. 192, 40 A. 933, 934, its rule is thus stated: "There is no rule of construction more fixed and unyielding than that requiring strict construction of grants to corporations." That case approved this statement: "In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation. This is the rule sustained by all the courts in this country and in England."
In our own state this rule obtains as announced in Abby v. Billups, 35 Miss. 618 at page 630, 72 Am.Dec. 143.
Here the corporations organized and chartered were authorized in 1888 to manufacture and sell electric energy in the City of Jackson or in the City of Jackson and "its suburbs." The disputed area then lay some two miles outside the city, was virtually inaccessible and uninhabited. It was not a part of the municipality nor can it be argued that it was a part of its suburbs. In any event neither Jackson Gas Light Company, Light, Heat and Water Company nor Mississippi Power & Light Company provided or attempted to provide, electric service to the area from 1888 to 1939, a period of 51 years. In 1939, Capital Electric began supplying the area with this service. Since 1939 and until the present dispute arose, Capital Electric has supplied the area with adequate electric service while Mississippi Power made no objection and installed only 6 scattered services.
We are unable to attribute to the Legislature a purpose, in granting the 1860 and 1888 charters to place in limbo in perpetuity, as far as electric service was concerned, an area of indefinite extent surrounding the City of Jackson in every direction. The language of the 1888 Act "Jackson and its suburbs" does not warrant the assumption that there was a grant in perpetuity of an implied power to serve, when, as and if it chose to do so, a territory which was neither a part of the City of Jackson, nor of its suburbs. If it might be assumed that a right to serve the area was implicit in the early charters it carried with it a corresponding obligation to provide service. If such was the case, neither Mississippi Power nor its predecessors made any attempt to fulfill that obligation for 51 years prior to 1939 when Capital Electric began providing the service. Moreover, it had made only 6 scattered connections from 1939 until the present dispute arose. If the right to serve the area ever existed under the charters, it was lost through abandonment, and Capital Electric was entitled to the "grandfather" certificate granted it by the Commission under the 1956 Act.
Whatever effect the 1860 and 1888 charters may have had in placing unalterably and forever, the right to serve the "City of Jackson and its suburbs," in the two early corporations and their successors, the area now in dispute clearly was neither within the City of Jackson nor a part of its suburbs. The language and purposes of the charters do not permit any reasonable inference that it was within the contemplation of the Legislature that authority granted to serve an urban area described as "Jackson and its suburbs" would also include unsettled country land lying two miles away. Mississippi Power and its predecessors wholly failed to serve the area or to assert any right to do so following the grant of the charters in 1888. Since 1939 it has been adequately served by Capital Electric. These circumstances are persuasive upon the proposition that no such power under the charters was considered to have existed.
In the Winona case the Court said:
On the effective date of the Public Utility Act, and before the disputed area came within municipal limits, the legislature by that Act vested in Delta a right to receive for it a grandfather certificate. *405 This was a valid exercise of the police power of the state. The municipal franchise and street lighting contract were not preexisting rights as to the area involved in this suit, because before they could attach, if at all, the certificate issued to Delta by the Commission under the Act attached to the disputed area. There is no constitutional objection to this interpretation. On the contrary, to deprive Delta of the disputed area as a service territory would not only be contrary to the mandatory terms of the statute, but would also be violative of the certificate granted to it by the Commission. See Miss. Laws 1956, Ch. 372, Sec. 26(d) (scope of review). 250 Miss. at 511-512, 149 So.2d at 514.
We are unable to accord a broader scope to the right claimed under the early corporate charters to serve the City of "Jackson and its suburbs" than is accorded to a similar grant to a utility under the 1956 Act. In neither case will the expansion of the area, whether it comprises a municipality and its suburbs or only the municipality itself, warrant an invasion of an area previously certificated to and being served adequately by another utility.
It may be of interest to note that the early charters included heat, light and water service as well as electric service, although, of course, no right to provide water and gas service in the territory is involved here. We are unable to attribute to the Legislature in granting the 1860 and 1888 charters a purpose to preclude a subsequent grant of service rights for electric, gas or water service in any territory that might at any time thereafter, be annexed to the City of Jackson, in perpetuity.
In Zeigler v. Zeigler, 174 Miss. 302, 310, 164 So. 768, 770 (1935) the Court said:
In construing statutes, the chief desire of the courts is to reach the real intention of the Legislature, and knowing this to adopt that interpretation which will meet the real meaning, though such interpretation may be beyond or within, wider or narrower, than the mere letter of the statute. Unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible. Kennington v. Hemingway, 101 Miss. 259, 57 So. 809, 39 L.R.A.(N.S.) 541, Ann.Cas. 1914B, 392; Leaf Hotel Corporation v. City of Hattiesburg, 168 Miss. 304, 150 So. 779; Canal Bank & Trust Co. v. Brewer, 147 Miss. 885, 113 So. 552, 114 So. 127; City of Holly Springs v. Marshall County, 104 Miss. 752, 61 So. 703; Gunter v. City of Jackson, 130 Miss. 637, 94 So. 844; Huber v. Freret, 138 Miss. 238, 103 So. 3.
The case of Capital Electric Power Ass'n v. Mississippi Power & Light Company, 240 Miss. 139, 150-151, 125 So.2d 739, 743 (1961) was the first decision of this Court under the Act of 1956 and in it the Court said:
It is clear from Chapter 372, Laws of 1956, that it was the intention of the legislature that facilities of one utility should not be duplicated in the same area. * * * The manifest policy of the act is to prevent duplicating and overriding facilities and certificates. * * * An existing utility within the certificated area has the right and duty to provide the service, and must be given that opportunity. If it fails, the commission can award another franchise to another utility. Section 5(c) and (f) makes this clear. (Emphasis added.)
Finally, it is argued that because of its contract with the City of Jackson to provide street light and other services that it has the right to follow the customer into the added territory. In Capital Electric Power Ass'n v. Mississippi Power & Light Co., 218 So.2d 707 (Miss. 1969) this proposition was rejected.
We are of the opinion that the order of the Mississippi Public Service Commission, *406 as affirmed by the chancellor, was amply supported by evidence, was in accord with the law of the case, and that the decree appealed from should be affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, BRADY and ROBERTSON, JJ., concur.