427 So.2d 963 (1983)
MISSISSIPPI TELEPHONE CORPORATION
v.
MISSISSIPPI PUBLIC SERVICE COMMISSION.
No. 53997.
Supreme Court of Mississippi.
February 23, 1983.
Stennett, Wilkinson & Ward, Stanley Q. Smith, Gene A. Wilkinson, Sullivan, Hunt, Spell, Shackelford & Henson, William E. Spell, Jackson, for appellant.
Bennett E. Smith, Jackson, Hall, Callender & Dantin, Maurice Dantin, Columbia, for appellee.
Before BROOM, P.J., and ROY NOBLE LEE and PRATHER, JJ.
*964 PRATHER, Justice, for the Court:
This appeal involves the Public Service Commission's cancellation of a utility's certificate of convenience and necessity due to inadequate service. The Commission's decision was previously appealed to the Chancery Court of Greene County, but the Commission's decision was affirmed. On appeal to this Court, the Utility assigns as error the following:
(1) The Public Service Commission erred in proceeding against the Utility because the formal complaint was not verified as required by Rule 4C of the Utility Rules of Practice and Procedure.
(2) The Public Service Commission erred in combining two mutually exclusive administrative proceedings provided by Mississippi Code Annotated sections 77-3-1 through -89 (1972 and Supp. 1982) and sections 77-3-401 through -425 (1972).
(3) The Public Service Commission erred in canceling the Utility's certificate after a stay of the proceedings was granted, and without permitting the Utility to present its entire case in defense.

FACTS
Mississippi Telephone Corporation (the Utility) has for several years provided telephone service to portions of Greene and Wayne Counties. However, on November 2, 1979, the Mississippi Public Service Commission (the Commission) and the Attorney General's Office filed a formal complaint against the Utility for inadequate service. The complaint alleged that the Utility was not rendering service as provided for in Mississippi Code Annotated section 77-3-401 (1972), and that a hearing should be held to determine the inadequacy of service pursuant to Mississippi Code Annotated section 77-3-21 (1972).[1]
On January 31, 1980, the Utility filed its answer. In its answer the Utility placed all blame for its service record on the damage caused by Hurricane Frederic and on financial difficulties. Moreover, the Utility alleged that it had retained an engineering firm for the purpose of repairing and modernizing its facilities, and that it had contacted the Rural Electric Association (REA) in order to acquire a loan for necessary construction.
A hearing followed, in which the Commission heard testimony from both customers and expert witnesses. As a result of that testimony, the Commission entered its order of March 11, 1980. That order concluded that the Utility was not providing reasonably adequate service. In addition, the order listed several corrections for the Utility to make. Among those changes were requests to pursue a new construction plan offered by the Utility, to change the identity of management, and to submit a definite operating policy to the Commission with regard to repair service, new service, and disconnects for nonpayment. A subsequent order was entered on May 6, 1980, which extended the Utility's deadline for compliance with the earlier order to May 15, 1980. No appeal was taken from the March 11 or May 6 orders.
On December 11, 1980, the Commission filed a new complaint pursuant to section 77-3-407, and required the Utility to show cause why it should not forfeit its charter of incorporation and have its certificate cancelled for failure to comply with the March 11, 1980 order.
A hearing on this new complaint was begun on February 19, 1981. The Utility again raised by motion the first two assignments of error, namely, the non-verification of the November, 1979 complaint and the combination of two statutory procedures in the first hearing. Upon overruling both motions, the Commission heard the Commission's expert and lay witness testimony concerning the Utility's noncompliance with the March 11, 1980 order.
*965 At the conclusion of the Commission's proof, attorneys representing the Utility filed a motion seeking a stay of the proceedings. The basis for the motion involved a proposed divestiture from the Utility's current owner and manager, Mr. Miller, to a new five-member group for five years. Under this plan, Miller would still own the Utility but he would not have any influence in directing the management of the Utility. Since management problems were considered a major cause of the Utility's poor service record, it was apparently the Utility's counsel's belief that the divestiture would satisfy the Commission.
The requested stay of the proceedings was then granted "until further orders of the Commission." The record then states the following:
BY CMR. HAVENS:
One other thing, Mr. Chairman, let me make an inquiry to you as Chairman. I am under the impression that the motion that is sustained is a stay of these proceedings 
BY CHMN. JOHNSON:
That's correct.
BY CMR. HAVENS:
That in any event that this agreement in its entirety should faulter, we can pick up the proceedings where we left off.
BY CHMN. JOHNSON:
I don't know.
BY MR. WILKINSON [Utility Counsel]:
That is correct.
BY MR. DANTIN [Commission Counsel]:
Yeah.
BY CHMN. JOHNSON:
It appears that both lawyers are in agreement on it.
On April 7, 1981, the Utility filed a petition for review of the divestiture by the Commission. The petition also requested that the Commission's decision in that regard be stated in an appropriate order. No further hearings were conducted, and no notice concerning additional matters was given to the Utility.
On June 2, 1981, the Commission entered a final order. The final order recited the Utility's failure to render reasonably adequate service as required by the Commission within a reasonable time. It further stated:
That the hearings, notice, and findings of failure to render adequate service, and specifications of particulars and establishment of reasonable time within which to correct said failure as contained in said orders comply with the requirements of section 77-3-21 of the Mississippi Code of 1972.
Finally, the order stated that the Utility's certificate of public convenience and necessity should be cancelled.
The Utility appealed from the final June 2, 1981 order, and it followed the appeal procedure provided in section 77-3-67 to the chancery court. On appeal, the chancery court affirmed the Commission's order of cancellation, but it remanded the cause back to the Commission for one correction. The Commission was ordered to provide a procedure for the certificated area to receive service during the period prior to final cancellation of the Utility's certificate.

LAW

I.
The first question considered is whether the unverified formal complaint of November 2, 1979, renders the Commission's orders null and void. This Court answers in the negative.
Admittedly, Rule 4C of the Utility Rules of Practice and Procedure of the Mississippi Public Service Commission provides that every complaint "shall be verified by at least one complainant or his attorney."[2] And, in a similar case, this Court required strict compliance with a legislative statute calling for verification. In Mitchell v. Tishomingo Savings Institution, 53 Miss. 613 (1876), we held that an answer in chancery must be verified by affidavit when required by statute, *966 and, if omitted, the answer may be treated as a nullity, and stricken from the files on motion.
In the case at bar, the Utility's counsel raised this issue by motion prior to any hearing. When this motion was discussed by the respective attorneys before the Commission, the Commission's attorney volunteered to amend the complaint so long as a continuance would not be granted to delay the proceedings. The Utility's counsel agreed. Nonetheless, a verification was never appended to the complaint, and the first hearing proceeded.
As a result of that first hearing, the Commission entered its order of March 11, 1980. And, no appeal was taken from that order. Instead, the Utility waited and appealed from the Commission's final order entered after the second hearing.
In our opinion, the Utility waived its previous objection by its later inconsistent action. The Utility should have raised the verification issue on an appeal following the Commission's first decision. It cannot wait until the Commission has rendered a second opinion, which is based in part on the Commission's first opinion, to appeal an issue concerning the first hearing only. Thus, the Utility is precluded from having this issue considered on appeal.

II.
The second issue presented to this Court is whether the Utility was denied due process by the Commission's simultaneous use of two statutory administrative procedures. We find that there was no denial of due process.
The Commission's position with regard to this assignment is that there are two compatible procedures for remedying inadequate service. The first procedure, passed in 1940 and requiring the petition of the Attorney General, applies only to domestic telephone and telegraph public service corporations. This procedure is found in sections 77-3-401 to -425 of the Mississippi Code Annotated (1972). Under section 77-3-401, the Commission is empowered to determine whether the corporation is providing in a reasonably adequate manner the public service authorized by its charter of incorporation. If the corporation is providing inadequate service, the Commission may order corrections to be made within a reasonable time. Miss. Code Ann. § 77-3-407 (1972). The ultimate penalty under this procedure, when corrections have not been made as required, is forfeiture of the charter of incorporation. Miss. Code Ann. § 77-3-411 (1972). Finally, appeal may be permitted in the Circuit Court of the First Judicial District of Hinds County. Miss. Code Ann. § 77-3-413 (1972).
The second procedure was passed in 1956 and applies to several types of utilities, including telephone and telegraph utilities. Miss. Code Ann. § 77-3-21 (1972). Under this procedure, the Commission must determine whether the Utility is rendering reasonably adequate service in any area covered by its certificate. And, if the Utility is not providing adequate service, the Commission may order the Utility to make corrections within a reasonable time. The ultimate penalty under this section is the revocation and cancellation of the Utility's certificate of convenience and necessity. Appeal under the section 77-3-21 procedure is to a chancery court. Miss. Code Ann. § 77-3-67 (Supp. 1982).
The Utility's position on this issue is that the two procedures are mutually exclusive.[3] In comparing these two statutory schemes, it can be easily seen that the Commission conducts the same type of hearings and considers the same kinds of factual issues. The only differences in the two procedures are the ultimate penalties and the intermediate courts of appeal involved.
*967 Although the Commission, at times, made reference to the Attorney General procedure, the Commission apparently conducted this matter solely through the section 77-3-21 procedure. All notices, hearings, findings of inadequate service, and orders for corrections followed the section 77-3-21 procedure. The only penalty imposed was that permitted by section 77-3-21. And, appeal was made to the chancery court.
In our opinion, the Utility has not been harmed or prejudiced in any way by the Commission's reference to both procedures. Moreover, we believe that the Commission was permitted to proceed under both statutory procedures.[4] Otherwise, the Commission could be forced under some circumstances, to conduct four hearings, instead of two, to determine whether customers were receiving inadequate service and whether the Utility had made requested corrections before the Commission could impose both penalties. That would obviously result in a waste of time and money for no legitimate reason. Therefore, we affirm the chancery court's finding of no error on this assignment.

III.
The appellant's principal contention is that the Utility was denied due process when its certificate was cancelled without reconvening the second Commission hearing after the stay was granted. We hold that due process of law was not afforded to the Utility.
The Constitutions of the United States and Mississippi require that no person may be deprived of his property except by due process of law. U.S. Const. Amend. XIV, § 1; Miss. Const. art. 3, § 14. And, an administrative body must protect such rights before depriving a person of his property. See also Delta Electric Power Association, supra (a certificate of convenience and necessity issued by the Commission is a valuable right which is entitled to protection by the courts). Such rights include the right to present evidence at a hearing. Love v. Mississippi State Board of Veterinary Examiners, 230 Miss. 222, 92 So.2d 463 (1956).
After the granting of the stay by the Commission, the record reflects little beyond the Utility's filing of a petition to review the divestiture. At each meeting of the Commission after the February 19, 1981 partial hearing, an order was entered to the effect that the matter would be continued until the next regular meeting. These routine continuance orders did not provide for any notice to the Utility, or the Commission's attorney. No additional hearings were conducted.
The chancery court, in reviewing this issue, determined that the Utility sought special relief through the stay to accomplish two objectives: (1) the divestiture and (2) an intervention in the suit by the Telephone Management Corporation (the proposed five-member management). The chancellor then concluded that, having been granted the special relief and having failed to accomplish its two objectives, the Utility could not now complain of the Commission's failure to reconvene the hearing.
We disagree. Even if the proposed divestiture was deemed insufficient by the Commission, the Utility still had the right to offer other evidence, if any, showing compliance with the Commission's list of corrections. Since the Commission failed to permit the Utility its right to present evidence, we must reverse.

IV.
Our reversal is limited. There were no prejudicial issues raised by the appellant with regard to the Commission's March, 1980 order. As a result, that order finding that the Utility was not providing adequate service shall remain valid.
It is the second, February 19, 1981, hearing with which we are concerned. That *968 hearing was concluded without the benefit of hearing the Utility's side of these matters. Thus, the case is remanded to the Commission with the instructions that the Utility be granted the opportunity to present its case in defense and that all interested parties be given notice of that conclusion of the February 19, 1981 hearing.
AFFIRMED IN PART AND REVERSED IN PART. REMANDED TO MISSISSIPPI PUBLIC SERVICE COMMISSION.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and ROBERTSON, JJ., concur.
NOTES
[1] The Utility responded first by filing several motions. The first motion requested a dismissal of this complaint for failure of the Commission or the Attorney General's office to verify its complaint. A second motion also sought dismissal for the Commission's failure to choose between two allegedly exclusive statutory procedures, namely, section 77-3-21 or section 77-3-401.
[2] The Commission is empowered by statute to promulgate reasonable rules and regulations which are necessary to carry out the regulation of Utilities. Miss. Code Ann. § 77-3-45 (1972).
[3] In Delta Electric Power Ass'n v. Mississippi Power and Light Co., 250 Miss. 482, 149 So.2d 504 (1963), Justice Ethridge stated: "The statutory expression of one method for cancellation of certificates is justly to be construed as an exclusion of other methods." 250 Miss. at 507, 149 So.2d at 511. The appellant contends that this language renders the Commission's alleged use of two statutory schemes invalid. However, the two procedures provide for different penalties.
[4] We would like to call attention to our Legislature that there are two appeal routes from the same administrative agency, since a study of the Public Utility Laws is now being made by the Mississippi Legislature.